1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   MKB CONSTRUCTORS,

11                    Plaintiff,

12            v.

13   AMERICAN ZURICH INSURANCE
     COMPANY,

14

15                    Defendant.

CASE NO. C13-0611JLR

ORDER DENYING MOTION
FOR BIFURCATION

16                           I.    INTRODUCTION

17        Before the court is Plaintiff MKB Constructors's ("MKB") motion for bifurcation

18   of the trial.  (Mot. (Dkt. # 52).)  The court has considered MKB's motion, all submissions

19   filed in support thereof and opposition thereto, the balance of the record, and the

20   applicable law.  Being fully advised, the court DENIES MKB's motion.

21   //

22   //

ORDER- 1

## II.    BACKGROUND

This case concerns an insurance coverage dispute involving a "Builders Risk" policy.  MKB contracted with the Lower Yukon School District ("LYSD") for a project, which included "the procurement, delivery and placement of gravel fill" for a new building pad and driveway upon which a school building would be built.  (Am. Compl. (Dkt. # 35) ¶ 6.)  Defendant American Zurich Insurance Company ("American Zurich") issued a "Builders Risk" policy to MKB for the period June 15, 2012, to October 31, 2012.  (*Id.* ¶ 8.)  Following a dispute concerning the amount of gravel fill required for the project and an alleged earth movement problem, LYSD terminated its contract with MKB.  (*Id.* ¶ 18.)  MKB notified American Zurich (*see id.* ¶¶ 16, 18), but American Zurich ultimately denied MKB's claim (*id.* ¶ 20).  This lawsuit ensued.

MKB now seeks an order directing separate trials on a number of issues.  (*See* Mot. at 1.)  First, MKB seeks an order "bifurcating the trial on the amount of MKB's breach of contract damages until after trial on whether there is coverage, and after completion of the appraisal procedure under the policy."  (*Id.*)  Second, MKB seeks an order "bifurcating trial of . . . American Zurich's . . . Eighth Affirmative Defense "Offset" and Eleventh Affirmative Defense "No Double Recovery" until after the parties have completed the appraisal procedure under the policy, and the amount of MKB's damages have been established."  (*Id.*)  Although MKB's proposal suffers from a lack of clarity, as the court understands it, MKB seeks two (and maybe three) separate phases of trial, interrupted by the parties' submission to an appraisal process conducted pursuant to certain provisions in the insurance policy.

ORDER- 2

1    In the first phase of MKB's proposal, MKB would like the court to hold a jury

2  trial on the coverage issue of whether there was more than two inches of settlement at the

3  building site.  (*Id.* at 5-6.)  In addition, MKB states that it will also try its extra-

4  contractual claims such as bad faith and its declaratory judgment claims during this first

5  phase.  (*Id.* at 6.)  In addition to its bad faith and declaratory judgment claims, MKB also

6  asserts claims under the Consumer Protection Act ("CPA"), RCW ch. 19.86, and

7  Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015.  (*See* Am. Compl. ¶¶ 28, 30-37.)

8  Presumably, MKB would try these claims during its proposed first phase as well.

9    Next, assuming that the jury finds in MKB's favor on the coverage issue (that

10  more than two inches of settlement occurred at the building site), then MKB proposes

11  that the parties proceed to engage in the appraisal process that is outlined in the insurance

12  policy to resolve the issue of the amount of MKB's loss.  (*Id.* at 6.)  If the court were to

13  adopt this process, however, it is unclear how or when the jury would calculate MKB's

14  damages (assuming it finds in MKB's favor with respect to damages).  For example,

15  would the jury award damages on MKB's bad faith, CPA, and IFCA claims (assuming

16  MKB prevails on one or more of these claims), but not on the coverage or breach of

17  contract claim, which MKB proposes should be determined through the policy's appraisal

18  process?  MKB's motion and other briefing are ambiguous on this issue.  Indeed,

19  American Zurich interpreted MKB's proposal to include a post-appraisal second phase of

20  jury trial to determine MKB's damages.  (*See* Resp. (Dkt. # 63) at 2.)  MKB insists that a

21  post-appraisal trial to the jury concerning damages will not be necessary because "the

22  court [can] make[] necessary determinations about the amount of attorney fees and any

1  offset that will be applied" as part of its "routine resolution of post-trial matters." (Reply

2  (Dkt. # 68) at 4.)  However, as noted above, MKB never explains how or when or by

3  whom a total determination of its damages, prior to any appropriate offset, will or should

4  be made.

5        MKB also seeks an order bifurcating American Zurich's affirmative defenses of

6  "offset" and "no double recovery" from any jury trial.  MKB argues that these defenses

7  should be presented in a separate trial to the court only after the jury trial and the parties'

8  participation in the policy's appraisal process are complete.  (*Id.* at 7-8.)  MKB contends

9  that American Zurich has no right to a jury trial with respect to these equitable defenses,

10  and presentation of American Zurich's evidence with respect to these defenses would

11  likely confuse the jury.  (*Id.*)  MKB also posits that if the jury finds in its favor with

12  respect to bad faith, then American Zurich is not entitled to assert these equitable

13  defenses at all, and the court may avoid this last phase of trial.  (*Id.*)  For these reasons,

14  MKB asserts that these affirmative defenses should be tried separately to the court.

15        In sum, MKB's proposed "bifurcation" proposal consists of an initial phase of jury

16  trial to address the coverage issue of the amount of ground settlement, as well as MKB's

17  other non-contractual claims (such as bad faith, declaratory judgment, CPA, and IFCA

18  claims), followed by an appraisal process to determine MKB's losses under the policy,

19  possibly followed by a second phase of jury trial to establish damages, and finally

20  completed with a trial to the bench on American Zurich's equitable affirmative defenses.

21        In addition to arguing that the forgoing process is "convoluted and unnecessary"

22  (Resp. at 2), American Zurich contends that the process is unduly prejudicial in that

ORDER- 4

1  removes "legitimate and necessary [coverage] issues and evidence from trial," which are

2  at the heart of American Zurich's defenses (*id.* at 6-8).  American Zurich also argues that

3  MKB has waived any right to utilize the appraisal process under the policy.  (*Id.* at 8-10.)

4  Finally, American Zurich argues that the evidence supporting its primary coverage

5  defense (that the policy does not cover MKB's claim) is the same as the evidence

6  supporting its equitable affirmative defenses.  Thus, American Zurich posits that it makes

7  little sense to bifurcate its equitable affirmative defenses from the jury trial because the

8  court will consider the same evidence for the equitable defenses as the jury will consider

9  with respect to American Zurich's primary coverage defense.  (Resp. at 11-12.)

## III.    ANALYSIS

11  Bifurcation of trial issues falls under Federal Rule of Civil Procedure 42(b), which

12  provides:

13  > For convenience, to avoid prejudice, or to expedite and economize, the
14  > court may order a separate trial of one or more separate issues, claims,
    > crossclaims, counterclaims, or third-party claims. When ordering a separate
    > trial, the court must preserve any federal right to a jury trial.

15

16  Fed. R. Civ. P. 42(b).  A decision on bifurcation is "within the sound discretion of the

    district court."  *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982).  In deciding a

17

    motion for bifurcation, the court may consider factors such as convenience, prejudice,

18

    judicial economy and whether the issues are clearly separable.  *Bowoto v. Chevron Corp.*,

19

20  No. C 99-02506 SI, 2008 WL 2074401, at *1 (N.D. Cal. May 15, 2008).  The party

21  seeking bifurcation "has the burden of proving that bifurcation is justified given the facts

22

1  in [the] case." *Spectra-Physics Lasers, Inc. v. Uniphase Corp.,* 144 F.R.D. 99, 102 (N.D.

2  Cal. 1992).

3        The court first addresses MKB's request to bifurcate American Zurich's equitable

4  affirmative defenses from the jury trial.  In this instance, the court finds no reason to

5  separate trial of the parties' legal claims and defenses from American Zurich's equitable

6  affirmative defenses.  The court is persuaded that the evidence pertaining to American

7  Zurich's primary coverage defense of no coverage under the terms of the policy and

8  evidence pertaining to its equitable affirmative defenses is largely, if not completely,

9  coterminous.  Thus, there is little chance of the type of undue prejudice asserted by MKB

10  that might result if American Zurich were to present evidence relevant to its equitable

11  defenses that is irrelevant with respect to its coverage defenses.  Further, conducting two

12  trials with respect to these issues will be duplicitous and waste both the parties' and the

13  court's resources.  *See Comm. Iron & Metal Co. v. Bache Halsey Stuart, Inc.*, 581 F.2d

14  246, 249-50 (10th Cir. 1978) (holding that where claims and defenses were factually

15  identical, "bifurcation into an equitable and legal action would be undesirable,

16  duplicitous and virtually impossible . . . .").  Accordingly, the court denies MKB's

17  request to bifurcate American Zurich's two equitable affirmative defenses from the jury

18  trial herein. [1]

19

20  _____

21      [1] Of course, where the court tries legal and equitable issue together in the same
proceeding, legal issues are to be determined first, and the findings of the jury are binding on the

22  court, as the trier of equitable claims.  *See GTE Sylvania, Inc. v. Continental T.V., Inc.*, 537 F.2d
980 (9th Cir. 1976), *aff'd*, 433 U.S. 36 (1977).

ORDER- 6

1    Next, the court considers MKB's request to bifurcate the issue of the value of

2    MKB's "loss" from the jury trial and to determine this issue in accordance with the

3    insurance policy's appraisal process following the proposed initial phase of jury trial.

4    Washington law is generally supportive of appraisal provisions in insurance policies.  For

5    example, Washington courts have found that appraisal awards under insurance policy

6    provisions are "conclusive as to the amount of loss," and may be challenged "only with

7    respect to fairness of the appraisal process." *Kochendorfer v. Metropolitan Property &*

8    *Cas. Ins. Co.*, No. 11-cv-1162, 2012 WL 1204714, at *2 (W.D. Wash. Apr. 11, 2012)

9    (quoting in part *Bainter v. United Pac. Ins. Co*., 748 P.2d 260, 262 (Wash. Ct. App.

10    1988)).  Washington courts also have stated that appraisal provisions are "justified in the

11    expectation that [they] will provide a plain, inexpensive, and speedy determination of the

12    extent of the loss." *Keesling v. Western Fire Ins. Co. of Fort Scott, Kansas*, 520 P.2d

13    622, 625 (Wash. Ct. App. 1974) (citing *Kavli v. Eagle Star Ins. Co*., 288 N.W. 723

14    (Minn. 1939)).

15    "However, where the fairness of the appraisal process is questioned by the insured,

16    through allegations of bias, prejudice, or lack of disinterestedness on the part of either an

17    appraiser or the umpire, factual issues properly reserved for jury determination may

18    arise." *Bainter*, 748 P.2d at 262.  Indeed, despite the independence of appraisers,

19    "authority and control over the ultimate disposition of the subject matter remains with the

20    courts." *Keesling*, 520 P.2d at 625 (citing *Hanby v. Maryland Cas. Co*., 265 A.2d 28

21    (Del. Sup. Ct. 1970) (additional citations omitted)).

22

1    In researching this issue, the court found more than one instance where a stay in

2    litigation was granted to permit the parties to complete the policy's appraisal process.

3    *See, e.g.*, *Trident Seafoods Corp. v. Commonwealth Ins. Co.*, No. C10-214RAJ, 2010 WL

4    3894111 at *8-9 (W.D. Wash. Sept. 29, 2010) (imposing stay in litigation pending

5    appraisal under policy); *Kessling*, 520 P.2d at 628 (affirming trial court's findings that an

6    insurer had not waived its right to demand appraisal, but reversing dismissal and

7    remanding for imposition of a stay pending appraisal).  The court, however, found no

8    case (and the parties cited none) permitting the parties to go to trial first and then

9    subsequently submit to the policy's appraisal process in order to determine the value of

10   the loss.

11       The reason for this paucity of case authority seems self-evident.  Permitting MKB

12   to go to trial first on the liability issues and then proceed to appraisal under the policy

13   would undermine the very justification for such clauses—to provide an "inexpensive[]

14   and speedy determination of the extent of the loss."  *Keesling*, 520 P.2d at 625.  As noted

15   above, MKB's proposal of engaging in the appraisal process after a jury trial on liability

16   issues risks requiring a second phase of jury trial with respect to the calculation of

17   damages.  Further, it is entirely possible that MKB will find fault with the appraisal

18   process once it is initiated.  As noted above, questions concerning the fairness of the

19   process create factual issues that are reserved for the jury.  If the parties proceed to trial

20   prior to the appraisal process, there will be no way for the jury to address these issues

21   should they arise.  MKB's proposal does not advance the goals or purpose of the policy's

22   appraisal process.  It undermines them.  Accordingly, the court denies MKB's request to

1   proceed through the appraisal process outlined in the policy after a jury trial with respect

2   to coverage liability.

3        If MKB would prefer to stand on the policy's appraisal provision, then it may

4   move for a stay in these proceedings in order to do so.  If MKB so moves, it must address

5   the standards for obtaining a stay in these proceedings,[2] and should also address whether

6   it has waived its right to invoke the appraisal provision by litigating this suit.[3]  The court

7   makes no determination at this time with respect to any of these issues.

8   //

9   //

10  //

11  //

12

13       [2] A district court has the "power to stay proceedings" as part of its inherent power to "control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  In determining

14  whether to stay an action, courts must weigh competing interests that will be affected by the granting or refusal to grant a stay.  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

15  Among these competing interests are (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward;

16  and (3) the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.  *Id.* (citing *Landis*, 299 U.S. at 254-55).

17

18       "The proponent of a stay bears the burden of establishing its need."  *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).  "If there is even a fair possibility that the stay . . . will work damage to some one else," the party seeking the stay "must make out a clear

19  case of hardship or inequity in being required to go forward."  *Landis*, 299 U.S. at 255.

20       [3]*See, e.g.*, *Meyer Flooring Covering Inc. v. Travelers Indem. Co.*, No. 12-cv-5596-RBL, 2013 WL 316200, at *3-4 (W.D. Wash. Jan. 28, 2013) (concluding that insurer had waived its

21  right to invoke the appraisal clause due to the "sheer length of time" between the insured's demand and the request for appraisal, the fact that good-faith negotiations appeared to have

22  broken down, and the prejudice to the insured engendered by the insurer's delay).

ORDER- 9

1

## IV.    CONCLUSION

2      Based on the foregoing, the court DENIES MKB's motion to bifurcate the trial

3  (Dkt. # 52).

4      Dated this 5th day of June, 2014.

5

6

7  JAMES L. ROBART

8  United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 10