1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
                                     AT SEATTLE
9

10   MKB CONSTRUCTORS,                          CASE NO. C13-0611JLR

11                      Plaintiff,              ORDER

12            v.

13   AMERICAN ZURICH INSURANCE
     COMPANY,
14
                        Defendant.
15

## I.     INTRODUCTION

16

17          Before the court is Defendant American Zurich Insurance Company's ("American

     Zurich") Federal Rule of Civil Procedure 37(c)(1) motion for sanctions against Plaintiff
18
     MKB Constructors ("MKB") seeking to exclude at trial MKB's supplemental damages
19
     computation which MKB disclosed after the discovery cutoff.[1]  (Mot. (Dkt. # 115).)  The
20

21          _____

22          [1] American Zurich entitled its motion as one "to preclude evidence at trial of Plaintiff's
     new claim presented after the close of discovery."  (See Mot. at title page (bolding and

ORDER- 1

1   court has considered the motion, all submissions filed in support of or opposition thereto,

2   the balance of the record, and the applicable law.  Being fully advised, the court

3   GRANTS American Zurich's motion, STRIKES MKB's supplemental response to

4   American Zurich's Interrogatory 2(a), and further ORDERS the supplemental damages

5   computation contained therein excluded from use at trial.

6                                    **II.    BACKGROUND**

7          This case is about an insurance dispute.  MKB is a Washington joint venture

8   comprised of Derian, Inc. and R. Scott Constructors, Inc.  (Am. Compl. (Dkt. # 35) ¶ 1.)

9   MKB contracted with the Lower Yukon School District ("LYSD") for a project, which

10  included "the procurement, delivery and placement of gravel fill" for a new building pad

11  and driveway upon which a school building would be built.  (*Id.* ¶ 6.)  American Zurich

12  issued MKB a "Builders Risk" policy for the period of June 15, 2012, to October 31,

13  2012, which provided MKB with insurance coverage related to the LYSD project.  (*See*

14  *id.* ¶ 8.)  A dispute arose between MKB and LYSD about the volume of fill required to be

15  placed on the building pad.  Eventually, LYSD terminated its contract with MKB

16

17  capitalization omitted).)  MKB asserts that American Zurich's motion constitutes a motion in
    limine and argues that it is in violation of Local Rule (d)(4), which requires that all motions
    in limine be filed in one motion and without a reply memorandum.  *See* Local Rules W.D. Wash.

18  LCR 7(d)(4); (Resp. at 1-2; Sur-reply (Dkt. # 124).)  MKB asks the court to strike American
    Zurich's later filed motions in limine (AZ MIL (Dkt. # 121)), as well as American Zurich's reply

19  memorandum to this motion.  (Sur-reply at 3.)  The court, however, is satisfied that American
    Zurich is entitled to bring a motion seeking relief under Rule 37(c)(1) independently of its

20  motions in limine.  *See, e.g., Continental Cars, Inc. v. Mazda Motor of Am., Inc.*, No. C11-5266
    BHS, 2012 WL 4903253, at *1 (W.D. Wash. Oct. 16, 2012) (resolving defendant's "motion for

21  Rule 37 relief").)  Accordingly, the court DENIES MKB's motion in its sur-reply to strike
    American Zurich's motions in limine and American Zurich's reply memorandum to the present

22  motion.

1    (7/22/14 Videa Decl. (Dkt. # 94) Ex. 32), and withheld payment of the remaining contract

2    balance of $1,436,419.40 (*see id.* Ex. 33 at MKB000012).  MKB and LYSD entered into

3    arbitration before finally settling their dispute (*see generally id.* Ex. 35).  As part of their

4    settlement, LYSD paid MKB $1,436,419.40.  (*Id.* at 2.)

5          MKB notified American Zurich that it was placing a claim under its Builders Risk

6    policy for the damages or losses it had incurred with respect to earth movement beneath

7    the LYSD building pad.  (*Id.* Ex 39.)  On December 28, 2012, MKB sent a letter to

8    American Zurich submitting the "specific monetary damages" that MKB was claiming

9    under the Policy "as a direct result of earth movement." (*Id.* Ex. 40 at 2.)  The specific

10   items MKB listed in its letter included:

11        A. Contract Balance:                    $ 1,436,419.40       (Tab A)
          B. Additional Foundational Materials:    $   669,508.99       (Tab B)
12        C. Incidental Costs:                     $   464,268.10       (Tab B)
             Markup & Overhead:                    $   208,880.62
13           Policy Deductible (Earth Movement):   $  -100,000.00
             Legal and Professional Fee:           $          TBD
14                                                 $ 2,679,095.11

15   (7/22/14 Videa Decl. Ex. 40; 7/22/14 Mullenix Decl. Ex. 32.)  With respect to the

16   $669,508.99 claimed for additional foundational materials, MKB originally calculated

17   "that 4,773 tons of *extra* [gravel] fill, beyond plan quantities, had cost them that amount

18   of money."  (*See* 8/27/14 Videa Decl. (Dkt. # 115) Ex. 10 (MKB Supp. Resp. to 1st Int.)

19   at 8.)

20         Throughout this litigation, MKB has repeatedly affirmed that it is claiming the

21   foregoing specific cost items originally listed in its December 28, 2012, letter to

22   American Zurich.  In its May 31, 2013, Initial Disclosures, MKB identified the same

costs as those listed in its December 28, 2012, letter.[2]  (MKB Initial Disclosures (Dkt. # 115-6) at 5, 8 (Ex. A), 9 (Ex. C).)  On August 21, 2013, in response to Interrogatory No. 2 of American Zurich's First Set of Interrogatories, which asked MKB to "[i]dentify with specificity each and every item of cost MKB contends it is owed under the Policy," MKB again referenced its December 28, 2012, letter to American Zurich and its Initial Disclosures.  (MKB Resp. to 1st Int. (Dkt. # 115-6) at 15 (". . . MKB has summarized and provided backup documentation for these costs before for American Zurich in MKB's initial disclosures and its December 28, 2012, claim submission . . . .").)  Finally, on February 18, 2014, during the course of American Zurich's Rule 30(b)(6) deposition of Mr. Jensen on behalf of MKB, MKB's counsel stated, "Let me just tell you MKB's legal position which is that we're seeking everything in this December 28th letter . . . ." (2/18/14 Jensen Dep. (Dkt. # 115-7) at 35:3-5.)

On June 5, 2014, MKB served a timely answer to a discovery request from American Zurich asking MKB to identify "with specificity the physical loss or damage to the building pad or foundation at the Project as alleged in MKB's response to American Zurich's Interrogatories, Set One, Interrogatory No. 1."[3]  (MKB Resp. to 3d Int. (Dkt.

---

[2] MKB's Initial Disclosures also asserted a claim for $500,000.00 as "Additional Amounts Claimed by LYSD."  (MKB Initial Disclosures at 9 (Ex. A).)  This claim is no longer at issue because MKB did not pay LYSD for any liability in the arbitration.  MKB's Initial Disclosures also include various mark-ups as a percentage of the MKB's claims for "Earth Movement" and the "Incidental Costs."  (*See id.*)

[3] In its response to American Zurich's Interrogatory No. 1, MKB had stated:  ". . . MKB sustained direct physical loss or damage to covered property (the building pad or foundation), resulting from a covered cause of law (earth movement, sinking, and shifting)."  (MKB Resp. to 1st Int. at 13.)

ORDER- 4

1    # 106-4) at 56.)  During the course of its response, MKB told American Zurich that the

2    amount of earth settlement it intended to prove at trial was equivalent to "9,869 tons of

3    fill." (MKB Resp. to 3d Int. (Dkt. # 106-4) at 61-62.)  MKB also told American Zurich

4    that it intended to rely on the following witnesses to prove this amount:  "Maria

5    Kampsen, . . . Bill Nesheim, Andy Romine, and Tony Wilson." (*Id.* at 62.)  American

6    Zurich deposed each of these individuals following MKB's June 5, 2014, interrogatory

7    response.  (*See* MKB SJ Reply (Dkt. # 112) at 5, n.22.)  Nowhere in MKB's June 5,

8    2014, interrogatory response, however, does it indicate that MKB's original damages

9    computation had changed based on the new amount of settling ("9,869 tons of fill") that

10   MKB now disclosed.  (*See generally* MKB Resp. to 3d Int.)

11          Pursuant to the court's November 7, 2013, scheduling order, the discovery period

12   closed on June 23, 2014.  (Sched. Ord. (Dkt. # 38) at 1.)  On July 17, 2014, more than

13   three weeks following the close of discovery, and just five days before the deadline for

14   dispositive motions, MKB sent via email a Second Supplemental Response to American

15   Zurich's First Set of Interrogatories to American Zurich.[4]  (8/27/14 Videa Decl. Ex. 10

16   (MKB Supp. Resp. to 1st Int.) at 7-9.)  MKB's July 17, 2014, supplemental response to

17   Interrogatory No. 2 states for the first time that MKB is entitled to $1,384,324.63 in

18   damages for the 9,869 tons of gravel fill that it first identified in its June 4, 2014,

19   interrogatory response.  (*See id.*)

20

21   _____

22          [4] MKB's supplemental response was not verified until August 6, 2014.  (Mot. at 6-7.)

ORDER- 5

1    It is unclear based on MKB's supplemental discovery response whether the new

2  damages calculation of $1,384,324.63 is intended to replace its original claim for

3  $669,508.99 in additional foundational materials, its original claim for the contract

4  balance of $1,436,419.40, both, or neither.  Indeed, the court is uncertain if MKB intends

5  to replace its entire previous damages computation, totaling 2,679,095.11, with the new

6  computation, or only a portion of it, and if so, which portion.

7    In its supplemental discovery response, MKB suggests that it is no longer claiming

8  the some of the specific figures it identified in its Rule 26 damages computation, but

9  rather utilizing those figures simply to support its new calculation.  For example, MKB

10  states that it "is not claiming that [American] Zurich is required to pay MKB [the

11  'Contract Balance' of $1,436,419.40] simply because LYSD decided to withhold earned

12  contract proceeds," but rather that the Contract Balance of $1,436,419.40 "demonstrates

13  that MKB had a financial and insurable interest in the covered property . . .  [and] also

14  provides evidence of the price of the fill that was lost due to settlement, as that is the

15  amount that LYSD withheld from MKB on the contract in order to pay for another

16  contractor to finish the Phase One work."  (*Id.* at 7-8.)  MKB also states that "[t]he

17  number for additional foundational materials ($669,508.99) is . . . useful for calculating a

18  unit price of the fill that was lost below original ground."  (*Id.* at 8.)  MKB then uses this

19  figure to calculate a unit price of $140.27 per ton.  (*Id.*)  Multiplying this figure by 9,869

20  tons, MKB arrives at its new damages calculation of $1,384,324.63.  (*See id.* at 9.)  Yet,

21  during the course of its July 17, 2014, supplemental interrogatory response, MKB never

22  expressly clarifies if its new damages computation of $1,384.324.63 is intended to

1  replace all or only a portion of its previous damages computation, or if its new damages

2  calculation is intended to be in addition to its previous computation.  The later option

3  seems unlikely to the court, but MKB never explicitly clarifies its intent with respect to

4  the new $1,384,324.63 figure.

5      On July 22, 2014 (the deadline for filing dispositive motions), the parties filed

6  dueling motions for summary judgment.  (*See* MKB SJ Mot. (Dkt. # 91); AZ SJ Mot.

7  (Dkt. # 93).)  American Zurich moved for summary judgment with respect to all of the

8  cost items listed in MKB's December 28, 2012, claim letter and MKB's Rule 26(a) initial

9  disclosures.  (*See* AZ SJ Mot. at 12-18.)  In its order on the parties' motions for summary

10  judgment, the court granted American Zurich's motion for summary judgment on the

11  $1,436,419.40 contract balance on grounds that it was undisputed that LYSD had already

12  paid MKB this amount in settlement of the arbitration proceedings between them.  (*See*

13  9/25/14 Order (Dkt. # 128) at 16-24.)  In its response to American Zurich's summary

14  judgment motion, MKB never discusses its new damages computation of $1,384,324.63

15  (which it had sent to American Zurich five days before the dispositive motions deadline),

16  how the new calculation relates to its previous damages computation in any way, or how

17  the court should consider the new computation in relation to American Zurich's motion

18  for summary judgment.  (*See generally* MKB SJ Resp. (Dkt. # 107).)

19      Further, in its response to American Zurich's present motion, MKB again fails to

20  clarify how its new damages computation of $1,384,324.63 relates to the specific items

21  listed in its original damages computation.  In response to American Zurich's present

22  motion, MKB states that "the real dispute at the heart of [American Zurich's] motion is

1  that of how to characterize the $1,436,419.40 in withheld contract proceeds that has been

2  part of MKB's claim since December 2012."[5]  (Resp. (Dkt. # 120) at 2.)  Yet, MKB

3  never subsequently clarifies it position concerning how the $1,436,419.40 contract

4  balance should be characterized in relation to its new damages computation.  MKB never

5  explicitly states whether the $1,384,324.63 figure is intended to replace the

6  $1,436,419.40 figure or is intended to be in addition to it.  In a convoluted argument,

7  MKB posits that "[t]he only thing that has changed since [its original damages

8  calculation] is that MKB has decided to present a more conservative claim to the jury

9  based on what it has learned in discovery," and that it "no longer intends to present a

10  16,883 ton loss, but a 9,869 ton loss."  (*Id.* at 4.)  Yet, MKB never explains from where it

11  derives the 16,883 ton loss or what portion of its original damages computation is

12  represented by that figure either.[6]  Thus, despite MKB's assertion that its new damages

13  computation is more conservative than its original, the court is at a loss as to how the new

14  damages computation actually relates to MKB's original damages computation.

15  Ultimately, MKB never explains if its new damages calculation replaces all or just a part

16  _____

17  [5] MKB's responsive memorandum was filed on September 8, 2014, prior to the court's
    September 25, 2014, order granting American Zurich's motion for summary judgment with
18  respect to the contract balance on grounds that LYSD paid MKB $1,436,419.40 in settlement
    after MKB initiated arbitration proceedings against LYSD.

19

20  [6] In its reply memorandum in support of its motion for partial summary judgment, MKB
    states that the 16,883 ton loss is based on the 4,773 tons that is represented by the $669,508.99 of
    additional foundational materials claimed in its original damages computation, plus 12,110
21  additional tons of fill that MKB alleges still remained to be placed to fulfill the requirements of
    the Phase I contract.  (MKB SJ Reply (Dkt. # 112) at 3.)  Once again, however, MKB never
22  explains from where it derived the 12,110 ton figure or how that figure relates to its original
    damages claim.

ORDER- 8

1   of the original computation, and its arguments in this regard are completely opaque.   The

2   court is forced to conclude that MKB's arguments are intended to confuse rather than

3   elucidate the issue.

4          This matter is presently scheduled for a jury trial on October 20, 2014, which is

5   just three weeks away.  Because MKB did not disclose its new damages computation

6   until after the close of discovery and just five days prior to the dispositive motions

7   deadline, American Zurich moves under Federal Rule of Civil Procedure 37(c)(1) for

8   sanctions to prohibit MKB from using its newly revealed damages computation at trial.

9   (*See generally* Mot.)

10         In its response, MKB "does not dispute that its claim, and the documents

11   supporting that claim, were required to have been produced to [American] Zurich in

12   discovery."  (Resp. at 2.)  Although MKB acknowledges that it did not provide the actual

13   damages computation of $1,384,324.63 until after the discovery cutoff, MKB argues that

14   American Zurich is not prejudiced because MKB provided American Zurich with all of

15   the information it needed to come up with the new computation on its own during the

16   discovery period.  (*See* Resp. at 7-9.)  In particular, MKB states:

17         . . . MKB supplied [American] Zurich with . . . exhaustive documentation
           of the project in response to [American] Zurich's first set of requests for
18         production.  For instance, MKB provided [American] Zurich with 5,355
           pages of documents, including invoices, timesheets, and anything else
19         [American] Zurich could possibly want in determining how much anything
           project-related actually cost.  [American] Zurich has everything its expert
20         says is needed to determine the cost to repair a 9,869 ton loss.

21   (Resp. at 9.)  MKB also argues that if the court "concludes MKB should have made some

22   greater disclosure than it did," the court should impose a lesser sanction than the

1   exclusion of MKB's new damages computation. (*Id.* at 10.)  Specifically, MKB asks the

2   court to limit any sanction to allowing American Zurich to re-depose Mark Jensen (who

3   MKB previously designated as Federal Rule of Civil Procedure 36 deponent) and

4   permitting American Zurich's cost expert to issue a supplemental report on the issue of

5   the cost to repair a 9,869 ton settlement loss.  (Resp. at 10.)

6       The court now considers the merits of American Zurich's motion and MKB's

7   response.

8                              **III.    ANALYSIS**

9       Federal Rule of Civil Procedure 26(a)(1)(A) provides in relevant part that "a party

10  must, without awaiting a discovery request, provide to the other parties . . . a computation

11  of each category of damages claimed by the disclosing party—who must also make

12  available for inspection or copying as under Rule 34 the documents or other evidentiary

13  material, unless privileged or protected from disclosure, on which each computation is

14  based, including materials bearing on the nature and extent of injuries suffered . . . ."

15  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Rule 26(a)(1)(A) requires a party to disclose both "a

16  computation of each category of damages," as well as the documents and other

17  evidentiary material underpinning the computation.  *Id.*  In addition, Rule 26(e)(1)(A)

18  requires that "[a] party who has made a disclosure under Rule 26(a) . . . must supplement

19  or correct its disclosure or response . . . in a timely manner if the party learns that in some

20  material respect the disclosure or response is incomplete or incorrect, and if the additional

21  or corrective information has not otherwise been made known to the other parties during

22  the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).

1    Federal Rule of Civil Procedure 37(c)(1) "forbid[s] the use at trial of any

2 information required to be disclosed by Rule 26(a) that is not properly disclosed." *R & R*

3 *Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012) (quoting *Yeti by Molly,*

4 *Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) and *Hoffman v.*

5 *Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008)).  Specifically, Rule

6 37(c)(1) provides:

7        If a party fails to provide information or identify a witness as required by
         Rule 26(a) or (e), the party is not allowed to use that information or witness
8        to supply evidence on a motion, at a hearing, or at a trial, unless the failure
         was substantially justified or is harmless. In addition to or instead of this
9        sanction, the court, on motion and after giving an opportunity to be heard:

10       (A) may order payment of the reasonable expenses, including attorney's
         fees, caused by the failure;
11
12       (B) may inform the jury of the party's failure; and

13       (C) may impose other appropriate sanctions, including any of the orders
         listed in Rule 37(b)(2)(A)(i)-(vi).[7]

14   _____

15 [7] The remedies provided in Federal Rule of Civil Procedure 37(b)(2)(A)(i)-(vi) include:

16       (i) directing that the matters embraced in the order or other designated facts be
         taken as established for purposes of the action, as the prevailing party claims;
17
         (ii) prohibiting the disobedient party from supporting or opposing designated
18       claims or defenses, or from introducing designated matters in evidence;

19       (iii) striking pleadings in whole or in part;

20       (iv) staying further proceedings until the order is obeyed;

21       (v) dismissing the action or proceeding in whole or in part; [or]

22       (vi) rendering a default judgment against the disobedient party[.]

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

ORDER- 11

1

2   Fed. R. Civ. P. 37(c)(1).  The party facing sanctions bears the burden of proving that its

3   failure to disclose the required information was substantially justified or is harmless.  *R &*

4   *R Sails*, 673 F.3d at 1246 (citing *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir.

5   2008).

6         As explained above, under Rule 26(a), MKB was required to serve a computation

7   of damages on American Zurich, and under Rule 26(e), MKB was required to supplement

8   its damages computation in a timely manner.  MKB failed to comply with these

9   requirements when it revised its damages computation on July 17, 2014, after the close of

10  discovery on June 23, 2014.  Under any reasonable interpretation and application of Rule

11  26(a) and (e), MKB's supplemental disclosure of its revised damages computation on

12  July 17, 2014, as well as the specific methodology it used to compute those damages, was

13  untimely.

14        MKB, however, tries to minimize the impact of the untimeliness of its disclosure

15  by asserting that it had provide American Zurich prior to the discovery cutoff with

16  everything American Zurich needed to devise the revised damages computation on its

17  own.  (*See* Resp. at 9.)  MKB, however, is required to produce not only the materials on

18  which the computation can be formulated, but the computation itself.  *See* Fed. R. Civ. P.

19  26(a)(1)(A)(iii) ("A party must . . . provide . . . a computation of each category of

20  damages claimed by the disclosing party.").  "The plaintiff cannot shift to the defendant

21  the burden of attempting to determine the amount of the plaintiff's alleged damages."

22  *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 593 (D. Ariz. 2011)

1   (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294-95 (2nd Cir. 2006)).  Simply

2   providing documents or other information and assuming that the defendant will somehow

3   divine the plaintiff's damages computation from those documents or other information is

4   insufficient and not in accord with the requirements of Rule 26(a) and (e).  As the

5   language of Rule 26(a)(1)(A)(iii) indicates, for disclosure purposes, damages are

6   determined not by actual cost, but by what the party claims.  *See Patton v. Wal-Mart*

7   *Stores, Inc.*, NO. 2:12-cv-02142-GMN-VCF, 2013 WL 6158461, at *4 (D. Nev. Nov. 20,

8   2013).  The court concludes that MKB failed to comply with Rule 26(e) when it failed to

9   timely supplement its damages computation within the discovery period.  Thus, the

10  burden now rests with MKB to show that its failure was substantially justified or

11  harmless.  *See R & R Sails*, 673 F.3d at 1246.

12          The court first considers whether MKB's conduct was substantially justified.

13  Unfortunately, MKB offers no explanation for why it did not provide its revised damages

14  computation during the discovery period.  As noted above, MKB argues that American

15  Zurich had everything it needed to calculate MKB's revised damages on June 5, 2014,

16  when MKB told American Zurich in a discovery response that the amount of settling it

17  intended to prove at trial was equivalent to 9,869 tons of fill.  (*See* MKB Resp. at 9.)  If

18  this is true, however, then MKB also had everything it needed to supplement and produce

19  its own revised damages computation within the discovery period.  As discussed above,

20  there can be no doubt that MKB was under an obligation to do so.  *See* Fed. R. Civ. P.

21  26(e)(1)(A).  The court does not presume to know MKB's (or its counsel's) precise state

22  of mind when MKB failed to timely supplement its damages computation.  Whether

1   intentional or not, MKB's failure to timely comply with its obligations to supplement its

2   initial disclosures under Rule 26(e) gives the appearance of gamesmanship and of

3   attempting to impair American Zurich's ability to marshal a timely defense for trial.

4   Thus, the court concludes that MKB has failed to meet its burden of demonstrating that

5   its conduct was substantially justified.

6          The court next considers whether MKB's untimely disclosure of its revised

7   damages computation was harmless.  As discussed above, the fact that the MKB provided

8   other documents or information within the discovery period from which American Zurich

9   might have divined MKB's revised $1,384,324.63 damages calculation is insufficient to

10  avoid prejudice or harm to American Zurich.  MKB had repeatedly told American Zurich

11  that it intended to rely on the damages calculation provided to American Zurich in its

12  December 28, 2012, letter.  American Zurich was entitled to rely on MKB's disclosures.

13  American Zurich was not required to guess that MKB might attempt to prove some other

14  damages calculation at trial that MKB had not yet disclosed during discovery.  American

15  Zurich has been deprived of the opportunity to conduct discovery aimed at investigating,

16  evaluating, and testing MKB's new damages computation.  Indeed, American Zurich

17  retained experts based on MKB's original damages computations, and American Zurich

18  moved for summary judgment and has prepared for trial on that basis too.  MKB has not

19  met its burden of demonstrating that its failure to timely supplement its damages

20  computation was harmless.

21         Under the foregoing circumstances, the court would be justified in barring MKB

22  from utilizing its revised damages computation at trial.  Nevertheless, in the Ninth

1    Circuit, the court is required to consider whether an exclusionary ruling would amount to

2    dismissal of a claim.  *See R & R Sails*, 673 F.3d at 1247.  If so, then the court is further

3    required to consider whether the noncompliance at issue involved willfulness, fault, or

4    bad faith and also to consider the availability of lesser sanctions.[8]  *Id.*  Where, however,

5    exclusion would not amount to dismissal, the court is not required to make such findings.

6    *See id.* at 1248, n.1; *see also Hill v. Dep't of Homeland Sec.*, 570 Fed. App'x 667, 667

7    (9th Cir. 2014) (ruling that district court did not abuse discretion in excluding late

8    disclosed computation of damages because the exclusion order did not prevent the

9    plaintiff from presenting a claim and she was permitted to testify about her damages).

10   Subject to this court's September 25, 2014, ruling on summary judgment, MKB may still

11   rely on its original damages computation at trial.  Thus, excluding MKB's revised

12   damages computation would not amount to a dismissal of its claim.

13        Even if the court were to consider willfulness, fault, bad faith, and the availability

14   of lesser sanctions, however, the court would still conclude that exclusion is the

15   appropriate sanction here.  In the absence of any explanation from MKB as to why it

16   failed to adhere to its Rule 26(e) obligations to provide timely supplementation of its

17   damages computation, the court is forced to conclude that MKB's failure was willful.

18

19

20   [8] The Ninth Circuit identified several factors that the district court may consider in
     deciding whether to impose Rule 37(c)(1)'s exclusion sanction where the sanction would amount
21   to dismissal of a claim.  Those factors include (1) the public's interest in expeditious resolution
     of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the other
     parties, (4) the public policy favoring disposition of cases on their merits, and (5) the availability
22   of less drastic sanctions.  *Wendt v. Host International, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).

1    Indeed, as discussed above when the court considered whether MKB's conduct was

2    substantially justified, MKB's conduct in failing to timely supplement its damages

3    computation when it had all the information it needed to do so within the discovery

4    period, and its failure to provide the court with a coherent explanation for its dilatory

5    conduct, gives the appearance of bad faith.

6            The court also concludes that imposing lesser sanctions is not a viable solution and

7    cannot remedy the harm and prejudice that MKB's late disclosure has already caused.

8    MKB suggests that, instead of excluding its revised damages computation, the court

9    should permit American Zurich to (1) re-depose Mark Jensen (who MKB previously

10   designated as its Federal Rule of Civil Procedure 30(b)(6) deponent) and (2) issue a

11   supplemental report by one of its costs experts.  (Resp. at 10.)  Permitting American

12   Zurich to reopen Mr. Jensen's deposition would be of only minimal assistance to

13   American Zurich, however, because MKB has asserted that it is relying on the testimony

14   of a variety of witnesses for its revised damages computation, including Maria Kampsen,

15   Bill Nesheim, Andy Romine, Tony Wilson, and perhaps others.  (Resp. at 7; *see also*

16   8/27/14 Videa Decl. Ex. 10 (MKB Supp. Resp. to 1st Int.) at 9 ("These issues were

17   explored more fully at MKB's 30(b)(6) depositions, at the depositions of Richard

18   Norman, at the deposition of Steve Nourse, and at the depositions of Andy Romine and

19   Bill Nesheim.").)  Because American Zurich did not know about MKB's revised damages

20   computation at the time it deposed these witnesses, American Zurich would need (at a

21   minimum) the opportunity to re-depose all of these witnesses to limit any prejudice.

22   Further, although American Zurich's costs expert can address pricing issues, he cannot

ORDER- 16

1  opine on geotechnical issues.  Despite MKB's protestations to the contrary, the court

2  concludes that American Zurich would be entitled to supplement the reports of other

3  experts as well—not just its costs expert—in response to MKB's revised damages

4  computation.  After all, the revised damages computation is expressly based on a

5  different volume of earth settlement (9,869 tons of fill) than MKB had previously relied

6  upon in formulating its original damages computation (4,773 tons of fill).

7           Thus, the additional discovery required to mitigate the prejudice to American

8  Zurich if the court were to allow the introduction of MKB's revised damages

9  computation at trial would be far more extensive than suggested by MKB.  Under such

10  circumstances, it would be impossible for the parties to hold onto their current trial date,

11  which is only about three weeks away.  If, instead of excluding the use of MKB's

12  supplemental damages computation at trial, the court were to reopen discovery to

13  mitigate the prejudice to American Zurich, the court will be forced to reschedule the trial

14  date as well.  The late disclosure of information required by Rule 26 is not harmless when

15  it requires the court to reopen discovery and reschedule the trial date.  *See Wong v.*

16  *Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005) (as amended) ("Disruption

17  to the schedule of the court and other parties . . . is not harmless.").

18           In addition, the court spent considerable time and resources analyzing and

19  deciding the parties' recent motions for summary judgment.  A large portion of American

20  Zurich's motion was based on MKB's original damages computation.  (*See* AZ SJ Mot.

21  (Dkt. # 93) at 12-18.)  If the court were to permit MKB to proceed to trial on the basis of

22  its untimely revised damages computation, MKB could effectively escape the

ORDER- 17

1   consequences of the court's rulings on summary judgment with respect to its original

2   damages computation or render those rulings irrelevant.  In addition, American Zurich

3   would be deprived of any opportunity to test MKB's revised computation in a pre-trial

4   dispositive motion.  The court sets case schedules and asks the parties to adhere to those

5   schedules specifically to avoid situations like this where both the parties' and the court's

6   time and resources are at stake.  If the court permits MKB to rely on its untimely

7   supplemental damages computation at trial, then much of the time and resources devoted

8   by both the parties and the court in the recent round of dispositive motions will have been

9   for naught.  Sanctions other than the exclusion of the MKB's untimely supplemental

10  damages calculation at trial simply cannot mitigate this prejudice.

11      Courts are more likely to exclude damages evidence when a party first discloses

12  its computation of damages shortly before trial or substantially after discovery has closed.

13  *See, e.g.*, *CQ Inc. v. TXU Mining Co.*, 565 F.3d 268 (5th Cir. 2009); *24/7 Records v. Sony*

14  *Music Entm't*, 566 F. Supp. 2d 305, 318 (S.D.N.Y. 2008).  In *Hoffman v. Construction*

15  *Protective Services*, 541 F.3d 1175 (9th Cir. 2008), the Ninth Circuit affirmed the district

16  court's order excluding plaintiffs' damages evidence because they failed to provide any

17  computation of damages prior to the pretrial conference.  The court stated that the late

18  disclosure was not harmless because it would have most likely required the trial court to

19  create a new briefing schedule and perhaps re-open discovery, rather than simply set a

20  trial date.  *Id.* at 1179.  The same is true here.

21      Trial is set for October 20, 2014—just over three weeks away.  Even if the court

22  were to reopen discovery to permit American Zurich to investigate MKB's new damages

1  computation, three weeks would be insufficient time.  Thus, the parties' trial date would

2  be lost and the court would be required to reschedule it.  Further, much of the time and

3  expense incurred by the parties and the court in briefing and deciding the parties' motions

4  for summary judgment would be wasted if the court were to permit MKB to proceed to

5  trial based on its untimely revised damages computation.   Thus, the court GRANTS

6  American Zurich's motion for Rule 37 sanctions against MKB, and ORDERS that MKB

7  may not use its untimely supplemental damages computation at trial.

8                                          **IV.  CONCLUSION**

9          Based on the foregoing and for good cause shown, the court GRANTS American

10  Zuirch's motion for Rule 37 sanctions against MKB (Dkt. # 115) and ORDERS MKB not

11  use to its untimely supplemental damages computation at trial.

12          Dated this 29th day of September, 2014.

13

14

15          _____

16          JAMES L. ROBART
            United States District Judge

17

18

19

20

21

22

ORDER- 19