UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MKB CONSTRUCTORS, | CASE NO. C13-0611JLR |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PREJUDGMENT INTEREST, NONTAXABLE LITIGATION COSTS, AND ATTORNEY'S FEES |
| v. | |
| AMERICAN ZURICH INSURANCE COMPANY, | |
| Defendant. | |

## I.    INTRODUCTION

Before the court is Plaintiff MKB Constructors' ("MKB") motion for prejudgment interest, nontaxable costs, and attorney's fees.  (Mot. (Dkt. # 156).)  MKB filed its present motion following a jury trial and verdict in its favor and against Defendant American Zurich Insurance Company ("American Zurich").  (*See* Jury Verdict (Dkt. # 151).)  The court has reviewed MKB's motion and reply memorandum, American Zurich's responsive memorandum, and all other materials filed both in support of and

1   opposition to MKB's motion.  Being fully advised, the court GRANTS in part and

2   DENIES in part MKB's motion as more fully described below.

3                    **II.     BACKGROUND**

4       The court conducted a jury trial from October 20, 2014, to October 24, 2014, on

5   MKB's claims against American Zurich for breach of contract, violation of the Insurance

6   Fair Conduct Act ("IFCA"), RCW 48.30.015, and breach of the covenant of good faith

7   and fair dealing.  (*See* Dkt. ## 142, 146-47, 149.)  On October 24, 2014, the jury awarded

8   MKB a total of $2,357,906.71 in damages (*see* Judg. (Dkt. # 153)), which is comprised of

9   (1) $1,083,424.24 for American Zurich's breach of contract, (2) $274,482.47 for

10  American Zurich's violation of IFCA, (3) $862,000.00 in enhanced damages under the

11  same statute, and (4) $138,000.00 for American Zurich's failure to act in good faith (*see*

12  *generally* Jury Verdict (Dkt. # 151)).

13      MKB now asks the court to increase the judgment by $233,889.69 for

14  prejudgment interest and $160,580.50 for actual litigation costs.  (Mot. at 2.)  In addition,

15  MKB asks the court to award its reasonable attorney's fees.  (*Id.*)  MKB asks the court to

16  do so by increasing the amount of the jury's overall verdict by one-third to offset the

17  amount that MKB is contractually obligated to its attorneys under a contingent fee

18  arrangement that MKB negotiated partway through the litigation after initially agreeing

19  to pay its attorney's fees on an hourly basis.  (*Id.*)  Alternatively, MKB asks the court to

20  award $445,713.80 in attorney's fees based on an unenhanced "lodestar" figure.  (*Id.*)

21      American Zurich implicitly acknowledges that MKB is entitled to awards of

22  prejudgment interest, litigation costs, and attorney's fees following MKB's receipt of the

ORDER- 2

1    favorable jury verdict detailed above.  (*See* Resp. (Dkt. # 167) at 1-2 (asking the court to

2    deny MKB's motion in part by reducing the amount of interest, fees, and costs awarded).)

3    American Zurich, however, argues that MKB is entitled to a lower rate of prejudgment

4    interest (*id.* at 2-4), and that the court should disallow certain categories of litigation costs

5    (*id.* at 4-5).  American Zurich also argues that the court should award attorney's fees

6    based on the lodestar method and not based on a percentage of the verdict.  (Resp. at 6-7.)

7    Finally, American Zurich argues that MKB overstated its claim for fees because it did not

8    segregate successful and unsuccessful activities, that MKB's fee documentation is

9    inadequate in a number of respects, and that its request is excessive for various reasons.

10   (*Id.* at 7-11.)  The court now considers MKB's motion and American Zurich's various

11   objections.

12                              **III.    ANALYSIS**

13        **A.  Prejudgment Interest**

14        "In diversity actions brought in federal court a prevailing plaintiff is entitled to

15   pre-judgment interest at state law rates . . . ."  *Onink v. Cardelucci*, 285 F.3d 1231, 1235

16   (9th Cir. 2002); *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1155 (9th Cir.

17   1988) ("The recognized general rule is that state law determines the rate of prejudgment

18   interest in diversity actions. . . . The general rule has been followed in this circuit.")

19   (citations omitted).  Under Washington law, "[a] party is entitled to prejudgment interest

20   where the amount due is 'liquidated.'"  *Unigard Ins. Co. v. Mutual of Enumclaw Ins. Co.*,

21   250 P.3d 121, 128 (Wash. Ct. App. 2011) (citing *Weyerhaeuser Co. v. Commercial*

22   *Union Ins. Co.*, 15 P.3d 115, 132 (Wash. 2000)).

1    MKB asserts that two components of the judgment are liquidated:  (1) the

2    $1,083,424.24 that the jury awarded in contract damages, and (2) $233,659.00 of the

3    jury's $274,482.47 award for "actual damages" under IFCA.  (*See* Mot. at 3.)  The

4    $233,659.00 figure is based on certain invoices for legal fees from Carney Badley

5    Spellman that MKB incurred after American Zurich denied its insurance claim.  (*Id.*)

6    American Zurich does not dispute that these components of the judgment are liquidated

7    sums.  (*See generally* Resp.)

8        The parties agree that the court determines the rate of prejudgment interest by

9    looking to RCW 4.56.110.  (*See* Mot. at 3 ("The *rate* of prejudgment interest is

10   determined in Washington by reference to RCW 4.56.110.") (italics in original); Resp. at

11   2 ("RCW 4.56.110 provides the various pre-judgment interest rates depending on the type

12   of claim.")); *see also Unigard Ins. Co.*, 250 P.3d at 129.  The parties also agree that

13   where a judgment is "mixed," containing both tort and contract claims, the court should

14   apply only one interest rate.  (*See* Mot. at 3-4; Resp. at 2); *see also Unigard Ins. Co.*, 250

15   P.3d at 129.  Finally, the parties agree that in determining which rate to apply the court

16   should look to the various components of the judgment and determine whether the

17   judgment is primarily based in tort or in contract.  (*See* Mot. at 4; Resp. at 2); *Unigard*

18   *Ins. Co.*, 250 P.3d at 129.

19       Beyond agreement on the foregoing three basic precepts, however, the parties'

20   analysis diverges, and they ultimately disagree on how the court should arrive at the

21   correct interest rate to apply.  MKB concludes that the court should apply the twelve

22

1  percent rate applicable to contract disputes[1] (Mot. at 4), while American Zurich

2  concludes that the generally lower rate applicable to torts is appropriate, which is two

3  percentage points above the prime interest rate[2] (Resp. at 3).

4       MKB argues that in "determining what the judgment is primarily based on" and

5  which uniform interest rate to apply, the court should not look to the judgment as a

6  whole, but rather only to those component parts of the judgment that are liquidated.  (*See*

7  Mot. at 4 (citing *Unigard Ins. Co.*, 250 P.3d at 129).)  MKB cites no case authority in

8  which a court has expressly adopted this view.  (*See generally id.*)  Nevertheless, MKB

9  concludes that the judgment is primarily based on contract claims and not tort claims

10 because its award of $1,083,424.24 in liquidated damages for American Zurich's breach

11 of the insurance contract is greater than its award of $233,659.00 in liquidated IFCA

12 damages, which MKB acknowledges "would, standing alone, have the tort rate."  (*Id.*)

13 Thus, MKBconcludess that the court should apply the interest rate applicable to contracts

14 rather than the lower rate applicable to torts.  (*Id.*)

15      Although the court acknowledges that there is some superficial appeal to MKB's

16 approach, the court is not convinced that it is consistent with Washington law.  American

17 Zurich argues that, in determining the applicable interest rate under RCW 4.56.110, the

18 court must consider the nature of the judgment as a whole and not just the liquidated

19 _____

20      [1] *See* RCW 4.56.110(4) (incorporating "the maximum rate permitted under RCW
    19.52.010"); *see also* RCW 19.52.020 (referencing interest rate of 12 percent per annum).

21      [2] *See* RCW 4.56.110(3)(b) ("[J]udgments founded on the tortious conduct of . . . other
22 entities . . . shall bear interest . . . at two percentage points above the prime rate . . . .").

ORDER- 5

1    components thereof.  Although the court's research did not reveal any cases with the

2    precise facts at issue here, the court concludes, as described below, that Washington case

3    law is more supportive of American Zurich's position.

4        *Unigard Insurance Company* involved an insurance coverage and bad faith dispute

5    over environmental cleanup costs following the release of hazardous substances. 250

6    P.3d at 124-25.  In that case, the trial court applied a twelve percent prejudgment interest

7    rate based on RCW 4.56.110(4) to the liquidated portion of the judgment consisting of

8    past economic damages.  *See* 250 P.3d at 126.  The defendant insurer argued that the

9    court should have applied the rate applicable to judgments based primarily on tort claims.

10   *Id.* The plaintiff, however, defended the court's application of the twelve percent interest

11   rate "arguing that the judgment sounded primarily in contract."  *Id.*  Relying on *Woo v.*

12   *Fireman's Fund Ins. Co.*, 165 P.3d 557 (Wash. Ct. App. 2009),[3] the *Unigard* court

13   rejected the plaintiff's position.  *Unigard Ins. Co.*, 250 P.3d at 129-30.  The court

14   reasoned that a suit between an insurer and its insured stemming from a breach of the

15   policy does not necessarily sound in contract, and instead, the court should determine the

16   primary basis of the judgment by examining "the nature of the various claims and

17   damages," "taking account of all aspects of the relationships between insurer and

18   _____

19       [3] MKB asserts that *Woo* is inapplicable because it involves the selection and application
     of a post-judgment, rather than a prejudgment, interest rate.  (Reply (Dkt. # 169) at 2.)  If this
20   distinction is important, the court in *Unigard Insurance Company*, which is a prejudgment
     interest rate case, did not think so.  The *Unigard* court found *Woo* to be "closer precedent" than
21   the precedent proponed by the plaintiff in *Unigard*, and the *Unigard* court relied upon *Woo* in its
     analysis and in rendering its decision concerning the proper prejudgment interest rate to apply.
22   *Unigard Ins. Co.*, 250 P.3d at 129-30.

1    insured." *Id.* at 129 (citing *Woo*, 208 P.3d at 562-63).   In *Unigard*, the court held that

2    because the tort remedy of coverage by estoppel precluded litigation of a coverage (or

3    contract-based) defense, "the bad faith aspects of [the plaintiff's] case dominated the

4    contract aspect and drove the result." *Id.* at 130.   Thus, the court held that the interest

5    rate applicable to torts should apply.   *Id.*   In reaching this result, the court considered the

6    entire judgment and not just those portions to which it applied prejudgment interest.   *See*

7    *id.* at 128-30.

8           Because the court in *Unigard Insurance Company* considered the nature of the

9    entire judgment in rendering its decision concerning the proper prejudgment interest rate

10   to apply, despite the fact that the prejudgment interest rate would apply to only a portion

11   of the judgment, this court will too.   As American Zurich points out, the breach of

12   contract award was for $1,083,424.24, while the tort claims based on bad faith and IFCA[4]

13   totaled $1,274,482.47.   (*See* Jury Verdict.)   Thus, considering all the component parts of

14   the judgment, and taking into account all aspects of the relationship between MKB and

15   American Zurich, the court concludes that the judgment is primarily based in tort.

16   Accordingly, the interest rate found in RCW 4.56.110(3)(b) for "judgments founded on

17   the tortious conduct of . . . entities," which is two percentage points above the prime rate,

18   is applicable here.   The court, therefore grants MKB's motion for prejudgment interest,

19   _____

20          [4] IFCA is "analogous to a common law suit for bad faith denial of insurance coverage, or
     more generally analogous to a common law tort claim."   *F.C. Cloxom Co. v. Fireman's Fund*

21   *Ins. Co.*, No. C10-1603RAJ, 2012 WL 5992286, at *4 (W.D. Wash. Nov. 30, 2012).   Indeed,
     MKB has impliedly acknowledge that IFCA would be considered a tort claim under RCW
     4.56.110(3).   (*See* Mot. at 4 ("[T]he Carney Badley Spellman fees would, standing alone, have

22   the tort rate in RCW 4.56.100(3) applied . . . .").)

1  but at the rate found in RCW 4.56.110(3)(b) for judgments based primarily on torts,

2  rather than the rate found in RCW 4.56.110(4).

3        MKB also asks the court to award prejudgment interest on the breach of contract

4  invoices beginning in April 2013, which is the month following American Zurich's

5  denial of MKB's insurance claim.  (Mot. at 4.)  Similarly, MKB asks the court to award

6  prejudgment interest on the Carney Badley Spellman invoices beginning in November

7  2013, which is the month following settlement of the arbitration between MKB and the

8  Lower Yukon School District ("LYSD").  (*Id.* at 5.)  American Zurich objects to these

9  dates as contrary to Washington law.  (Resp. at 3-4.)  The parties agree that under

10  Washington law prejudgment interest should run from the date each particular invoice

11  was paid.  (Mot. at 4 (citing *Weyerhauser Co. v. Commercial Union Ins. Co.*, 15 P.3d

12  115, 133 (Wash. 2000) ("The date those invoices were paid established the proper time

13  interest began to run.")); Resp. at 3-4 (also citing *Weyerhauser*).)  MKB asserts, however,

14  that "the sheer volume of independent invoices would make such a calculation an

15  unreasonable burden on the court and the parties," and thus the court should simply

16  employ a short-cut and award prejudgment interest from two dates cited above.  (Mot. at

17  4.)  American Zurich counters that "[t]he burden is on MKB" to base its calculations on

18  Washington law, and because "MKB has not explained which invoices were paid

19  when, . . . it [is] impossible for [American] Zurich to . . . know whether it is prejudiced"

20  by MKB's novel approach.  (Resp. at 4.)

21        In the materials filed with its reply memorandum, MKB confirms that all of the

22  invoices associated with its breach of contract claim were paid prior to March 23, 2013.

1   (Lickliter Decl. (Dkt. # 170) ¶ 3.)  MKB also confirms that all but two of the Carney

2   Badley Spellman invoices were paid prior to November 2013, but calculating the interest

3   on all of the invoices as if they were paid no later than November 2013 results in a

4   $393.95 benefit to American Zurich.  Because MKB has confirmed that selecting the

5   dates it proposes for the commencement of prejudgment interest with respect to the

6   invoices at issue does not prejudice American Zurich, and in fact operates as a net benefit

7   to American Zurich, the court will apply those dates.

8       **B. Attorney's Fees**

9       In early 2014, MKB switched from paying its counsel's fees on an hourly basis to

10  a contingent fee arrangement.  (*See* Jensen Decl. ¶¶ 22-23.)  As a result, MKB now seeks

11  an order from the court increasing the amount of its overall judgment by 33% to

12  compensate it for the fee it is now obliged to pay its attorneys out of its overall recovery.

13  (*See* Mot. at 10.)  Alternatively, MKB seeks an award of $445,713.80 in fees based on an

14  unenhanced lodestar calculation.  (*See id.* at 10-11.)

15      Because MKB prevailed on its claim under IFCA that American Zurich had

16  unreasonably denied MKB's claim for coverage, MKB is entitled to recover its attorney's

17  fees under that statute.  *See* RCW 48.30.015(3).  MKB is also entitled to recover its fees

18  under *Olympic Steamship Co. v. Centennial Insurance Co.*, 811 P.3d 673, 680-81 (Wash.

19  1991), as a prevailing insured in a "legal action where the insurer compell[ed] the insured

20  to assume the burden of legal action, to obtain the full benefit of [the] insurance

21  contract."  *Id.* at 681.  American Zurich does not dispute that MKB is entitled to an award

22

1    of fees based on the jury's verdict.  (*See generally* Resp.)  Instead, American Zurich

2    argues that MKB's request for fees is excessive for several reasons.  (*Id.* at 5-12.)

3        **1.    Contingency Fee/Percentage of the Judgment**

4        First, the court agrees with American Zurich that MKB's request for an award of

5    attorney's fees by increasing the overall judgment by 33% is without support under

6    Washington law.[5]  (*See* Resp. at 6.)  MKB admits that it could find no case authority in

7    the context of an insurance coverage action authorizing an attorney fee award based on a

8    percentage of the insured's overall judgment.  (*Id.* at 10.)  The lodestar method is "the

9    default principle for fee calculation in Washington."  *See Brand v. Dep't of Labor &*

10   *Indus.*, 989 P.2d 1111, 1119 (Wash.  1983); *see also Mahler v. Szucs*, 957 P.2d 632, 651

11   (Wash. 1998) ("In the past, we have expressed more than modest concern regarding the

12   need of litigants and courts to rigorously adhere to the lodestar methodology."), *overruled*

13   *on other grounds by Matsyuk v. State Farm Fire & Cas. Co.*, 272 P.3d 802 (Wash. 2012).

14   Indeed, Washington law presumes that a properly calculated lodestar figure represents

15   reasonable compensation for counsel.  *Henningsen v. Worldcom, Inc.*, 9 P.3d 948, 959

16   (Wash. Ct. App. 2000).  Given these precepts of Washington law, the court declines to

17   carve out a new and unprecedented approach for fee calculation in insurance coverage

18   disputes in the context of this case.  Accordingly, the court denies MKB's request for fees

19

20   _____

21   [5] The court applies Washington law to determine the amount of fees because Washington
     law dictates whether fees are available in this case.  *See Madera W. Condo. Ass'n v. First*
22   *Specialty Ins. Corp.*, No. C12-0857-JCC, 2013 WL 5492964, at *6 n.2 (W.D. Wash. Oct. 1,
     2013).

1   based on a percentage of the overall judgment and instead will adhere to Washington's

2   traditional lodestar methodology.

3   **2.   Lodestar Method**

4           Under the lodestar method, there are two primary steps to calculating a fee

5   award. *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 201 (Wash. 1983) (quoting

6   *Miles v. Sampson*, 675 F.2d 5, 8 (1st Cir. 1982)).  "First, a 'lodestar' fee is determined by

7   multiplying a reasonable hourly rate by the number of hours reasonably expended on the

8   lawsuit."[6] *Id.*  MKB has calculated this figure to be $445,713.80.  (Mot. at 11 (citing

9   Jensen Decl. (Dkt. # 159) Ex. 3 (attaching invoices sent prior to MKB's switch to a

10  contingent fee);  Mullinex Decl. (Dkt. # 158) Ex. 1 (attaching time records after MKB's

11  switch to a contingent fee)).)  "Second, the 'lodestar' is adjusted up or down to reflect

12  factors, such as the contingent nature of success in the lawsuit or the quality of legal

13  representation, which have not already been taken into account in computing the

14  'lodestar' and which are shown to warrant the adjustment by the party proposing it."  *Id.*

15  at 201-02.  A party seeking attorney's fees "bears the burden of proving the

16  reasonableness of the fees." *Mahler*, 957 P.2d at 651.

17          **a.   Multiplier**

18          Although the lodestar methodology permits a party to request an upward

19  adjustment (commonly known as a mulitplier), such adjustments are "rare" under

---

[6] American Zurich has not challenged the hourly rates of MKB's attorneys (*see* Talmage Decl. at 9), and the court finds that the hourly rates charged by MKB's counsel are reasonable given their experience, background, and performance in this litigation.

1   Washington law.  *Mahler*, 957 P.2d at 651.  In its motion, MKB did not ask for an

2   upward adjustment of the lodestar figure based on the "contingent nature of success in the

3   lawsuit," *Bowers*, 675 P.2d at 201.  (*See generally* Mot.)  Rather, as an alternative to its

4   request for a 33% increase in the overall judgment, MKB seeks $455,713.00, which is a

5   straight calculation of its attorneys' hourly rates multiplied by the hours each of those

6   attorneys billed, without any upward or downward adjustment.  (*See id.* at 10 ("The

7   [c]ourt should increase the judgment by 33% or, alternatively, [award] $455,713.00 for

8   reasonable attorney fees incurred in bringing the coverage and IFCA claims."); *id.* at 11

9   (calculating total lodestar figure without requesting multiplier).)  Although MKB does

10  not seek a multiplier in its motion, it does ask for a 2.05 multiplier to be applied to the

11  foregoing lodestar figure in its reply memorandum.  (*See* Reply at 4-5.)  This request,

12  however, comes too late to provide American Zurich with an opportunity to respond.

13  Accordingly, the court declines to consider it.[7]  *See Martinez-Serrano v. INS*, 94 F.3d

14

15      [7] In any event, MKB failed meet its burden with respect to the application of a multiplier.
16  "The burden of justifying any deviation from the lodestar rests upon the party proposing it."
    *Berryman v. Metcalf*, 312 P.3d 745, 758 (Wash. Ct. App. 2013).  MKB's only argument for a
17  multiplier is that its fee agreement with its attorneys shifted to a contingency basis about a year
    into the litigation, but "Washington law does not require the application of a multiplier in every
18  contingency fee case."  *St. Paul Fire & Marine Ins. Co. v. Hebert Constr. Co.*, No. C05-388Z,
    2007 WL 563114, at *4 (W.D. Wash. 2007) (citing *Faraj v. Chulisie*, 105 P.3d 36, 43 (Wash.
19  App. 2004) (recognizing that multipliers can be appropriate in contingency cases but declining to
    apply one where the trial court did not)).  "The purpose of an upward adjustment of the lodestar
20  is to account for the contingent nature of the agreement and is based on an assessment of the
    likelihood of success at the outset of the litigation."  *Bowers*, 675 P.2d at 204.  Nowhere does
21  MKB provide this risk assessment for the court or explain why this coverage action involved
    unusual risk.  Given this failure and given the generally favorable state of the law in Washington
22  for insureds, the court cannot conclude that this insurance coverage action involved unusual risk
    either at the outset or at the time that MKB's fee arrangement shifted to a contingency basis.
    Further, given the fact that MKB's attorneys were paid in full for approximately one year of the

1256, 1259-60 (9th Cir. 1996) (declining to consider arguments raised for the first time in

an appellant's reply brief); *see also Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507,

1514 n.6 (9th Cir. 1994) (acknowledging that "serious questions of fairness" arise when a

party advances an issue for the first time in his reply).  MKB also does not request an

upward adjustment of the lodestar based on the quality of its representation.  (*See

generally* Mot.; Reply.)  The court, therefore, will not make any upward adjustment to

MKB's lodestar figure of $455,713.00.

### b.   Reasonable Number of Hours

The parties' dispute over MKB's claim for attorney's fees focuses on the number

of attorney hours for which MKB claims it is entitled to reimbursement and the

reasonableness of those hours.  Under Washington law, the court is required to

independently determine whether MKB has sustained it burden of demonstrating that the

number of hours expended by counsel was reasonable rather than merely relying upon

MKB's billing records.  *See Mayer v. City of Seattle*, 10 P.3d 408, 415 (Wash. Ct. App.

2000); *see also SentinelC3, Inc. v. Hunt*, 331 P.3d 40, 48 (Wash. 2014) ("In determining

an award of attorney's fees, the trial court may not rely solely on counsel's fee

affidavit.").

litigation, this "was not a high risk contingency case in which the lawyers risked no recovery at
all for their services."  *See 224 Westlake, LLV v. Engstrom Props., LLC*, 281 P.3d 693, 714
(Wash. Ct. App. 2012) (reversing trial court's enhancement of the lodestar for the contingent
nature of the case because the contingency fee arrangement was entered into when plaintiff's
principals became concerned about continuing to pay legal fees after about eleven months of
litigation and the contingent fee arrangement included paying counsel at half their hourly rates).

1    American Zurich makes a number of arguments as to why the court should reduce

2    MKB's claim for attorney fees.  First, American Zurich argues that MKB's bill should be

3    reduced due to the number of "block" time entries[8] in the time records and because some

4    of the descriptions in the time entries are truncated and provide little detail, such as "trial"

5    or "trial preparation."  (Resp. at 9; Talmage Decl. at 9.)  Having carefully reviewed

6    MKB's counsel's time records, the court does not find counsel's descriptions of the work

7    performed to be inadequate.  The documentation "need not be exhaustive or in minute

8    detail, but must inform the court . . . of the type of work performed . . . ."  *Bowers v.*

9    *Transamerica Title Ins. Co.*, 675 P.2d 193, 203 (Wash. 1983).  Here, although billing

10   entries for "trial," "trial preparation," or similarly truncated terms do not reflect model

11   practice, the court does not find that they fall below the standard set forth in *Bowers*.

12       The court, however, is concerned about the number of "block" time entries

13   contained in the billing records.  (*See generally* Mullinex Decl. Ex. 1; Jensen Decl. Ex.

14   3.)  For example, on March 19, 2014, Mr. Mullenix billed 10.4 hours for the following

15   tasks:  "Continue drafting CR37 submission; Meeting with bad faith expert; Review

16   Request for Admission answers; Research effect of Request for Admission non-answer;

17   Continue drafting CR 37 submission."  (Mullinex Decl. Ex. 1 at 66.)  Likewise, on March

18   13, 2014, he billed 6 hours for the following tasks:  "Prepare for Zimmerman deposition;

19   Prepare for CR 37: Meeting with bad faith expert."  (*Id.* at 67.)  On March 31, 2014, Mr.

20   _____

21       [8] "Block billing is the time-keeping method by which each lawyer . . . enters the total
     daily time spent working on a case, rather than itemizing the time expended on specific tasks."

22   *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (internal quotations marks
     omitted).

1    Dykstra billed 6.8 hours for the following tasks:  "Research on efficient proximate cause

2    and dominant cause cases; Email to Peter regarding subjects to ask Dugo; Review N&M

3    report and attachments to determine methodology."  (*Id.* at 58.)  In reviewing these and

4    similar entries throughout MKB's attorneys' billing records, there is no way for the court

5    to calculate how much attorney time was actually spent on any given task.

6        Courts have repeatedly found that counsel's practice of "lumping together multiple

7    tasks, mak[es] it impossible to evaluate their reasonableness."  *Role Models Am., Inc. v.*

8    *Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004); *see also Berryman v. Metcalf*, 312 P.3d

9    745, 756 (Wash. Ct. App. 2013) ("The block billing entries tend to be obscure.").  As a

10   result, the district court has the "authority to reduce hours that are billed in block format."

11   *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *see Lahiri v.*

12   *Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1223 (9th Cir. 2010) (ruling

13   district court did not abuse its discretion by reducing 80% of attorney's billable hours by

14   30% for block billing).  The court notes, however, that not all entries are block billed, and

15   that Mr. Dykstra in particular frequently made efforts to account for the time spent on

16   individual tasks within his otherwise block time entries.[9]  Nevertheless, the number of

17   block entries overall is significant and undermines the sufficiency of those records for

18   purposes of MKB meeting its burden of proof on this motion.  Having carefully reviewed

19

20       [9] For example, on April 8, 2014, Mr. Dykstra billed 4.6 hours, breaking down individual

21   tasks, as follows:  "Draft and finalize letter to Videa regarding MKB claim of work product
     privilege (2.4)[;] Revisions to Reply on Motion to Compel (1.2); Review of Nguyen documents

22   (1.0)."  (Mullinex Decl. Ex. 1 at 59.)

1  counsel's billing records, the court finds that a 20% reduction of all the blocked entries

2  within MKB's attorney's billing records is appropriate.[10]  *See, e.g.*, *Emove Inc. v. SMD*

3  *Software Inc.*, No. CV-10-02052-PHX-JRG, 2012 WL 4856276, at *7 (D. Ariz. Oct. 11,

4  2012) (reducing blocked billing entries by 20%); *see also Zest IP Holdings, LLC v.*

5  *Implant Direct Mfg., LLC*, No. 10-CV-0541-GPC (WVG), 2014 WL 6851612, at *9

6  (S.D. Cal. Dec. 3, 2014) (finding plaintiffs' own 20% reduction of block-billed hours to

7  be appropriate).

8        American Zurich also argues that it was excessive for MKB to employ a third

9  attorney, Mr. Kenneth Friedman, at the last minute for trial,[11] and that MKB's request for

10  fees should be reduced because Mr. Friedman made no effort to reduce his bill for the

11  initial hours he spent "getting up to speed" on the case and because he did not record his

12  time contemporaneously but rather reconstructed his time after the fact.  (Resp. at 8, 11;

13  Talmadge Decl. at 4-5, 7-8, 10.)  The court does not find that Mr. Freidman's addition to

14  MKB's team of attorneys just before trial was excessive or that he spent excessive hours

15  "getting up to speed."  Although it is not a uniform practice, it is not unusual for parties

16  _____

17        [10] This portion of the court's order applies to all of MKB's attorneys' time records
    contained within both Exhibit 1 of Mr. Mullinex's declaration and Exhibit 3 of Mr. Jensen's
18  declaration.  (*See* Mullinex Decl. Ex. 1; Jensen Decl. Ex. 3.)  If a particular time entry is blocked,
    then that entry is to be reduced by 20%, but if a time entry is not blocked, then no reduction of
19  that entry is required under this portion of the court's order.

20        [11] In addition, American Zurich complains that it was excessive for MKB to assign
    multiple attorneys to matters such as depositions and motions without any explanation as to why
21  it was necessary for multiple attorneys to work on these matters.  (*Id.* at 12; Talmage Decl. at 9.)
    The court, however, does not find that the assignment of two attorneys to this case prior to trial
22  or the addition of a third attorney shortly before trial to be excessive or out of the ordinary for
    typical practice in the Western District of Washington for a case with this level of complexity.

1   in this district to add an attorney with trial experience in the later stages of litigation if it

2   looks as though the case will in fact go to trial.  Further, all attorneys must spend time

3   familiarizing themselves with a case in order to perform effectively as an advocate, and

4   based on the court's review of Mr. Friedman's time records, there is no indication that he

5   charged an excessive number of hours for this purpose.  Thus, the court does not find that

6   either of these grounds provides a basis for any reduction in MKB's fee award.

7        The court, however, is more concerned with the lack of contemporaneous

8   recording and the after the fact reconstruction of Mr. Friedman's time records.  Mr.

9   Friedman does not deny that he reconstructed his time after the fact.  (*See* Supp.

10   Friedman Decl. (Dkt. # 171) ¶ 5.)  He also acknowledges that recording time records

11   contemporaneously is the "preferred" method, and that basing a fee request on

12   reconstructed records developed from litigation files "may 'provide the district court with

13   a reason to reduce the fee.'"  (*Id.* (citing *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1121

14   (9th Cir. 2000)).)  Mr. Friedman, however, also testifies that "none of the reconstructed

15   time was remote in time" and that he is "certain that the claimed hours omitted a

16   significant number of hours that could have been claimed," since he "was careful to

17   include only time that [he] could reconstruct accurately."  (*Id.*)  The court credits Mr.

18   Friedman's testimony that he carefully omitted time that he could not reconstruct

19   accurately and that his omission of hours was significant.   The court, therefore, will not

20   require any further reduction in hours by Mr. Friedman.

21        Finally, American Zurich argues MKB's request for fees is excessive because it

22   made no effort to segregate time spent on successful claims or activities from time spent

on unsuccessful claims or activities.  (Resp. at 9-11; Talmadge Decl. at 5.)  Under

Washington law, "[t]he total hours an attorney has recorded for work in a case is to be

discounted for hours spent on 'unsuccessful claims . . . or otherwise unproductive time.'"

*Miller v. Kenny*, 325 P.3d 278, 303 (Wash. Ct. App. 2014) (quoting *Bowers v.*

*Transamerica Title Ins. Co.*, 675 P.2d 193, 203 (Wash. 1983)).  Washington courts

instruct that a trial court must segregate fees where possible, but may avoid doing so if

the claims are "so related that no reasonable segregation . . . can be made."  *Hume v. Am.*

*Disposal Co.*, 880 P.2d 988, 997 (Wash. 1994).

American Zurich argues that MKB was unsuccessful or only partially successful

on a variety of activities prior to trial, including:  (1) MKB's motion for bifurcation,

which the court denied (Dkt. # 73); (2) MKB's first, second and third motions to compel

based on *Cedell v. Farmers Insurance Company of Washington*, 295 P.3d 239 (Wash.

2013), which the court largely denied, because although the court ordered American

Zurich to produce a revised privilege log and reviewed a portion of American Zurich's

privileged documents in camera, the court ultimately did not order American Zurich to

produce any of the documents at issue to MKB (*see* Dkt. ## 67, 99, 102); (4) MKB's

motion for reconsideration of the court's order concerning the scope of in camera review,

which the court denied (Dkt. # 101); (5) MKB's motion for summary judgment, which

the court largely denied (except for MKB's claim that it had complied with the notice

provisions of IFCA) (Dkt. # 128); (6) MKB's claims that it was entitled to the

$1,436,419.40 contract price it had paid to LYSD and its arbitration costs with LYSD as

two parts of its breach of contract damages, both of which the court denied by granting

1   American Zurich's motion for summary judgment with respect to those categories of

2   damages (Dkt. # 128 at 15-24); (7) MKB's attempt to use a supplemental contract

3   damages calculation at trial that was untimely disclosed and which the court excluded

4   (Dkt. # 129); (8) MKB's motion for reconsideration of the court's order concerning use

5   of its supplemental damages calculation, which the court denied (Dkt. # 132); and (9)

6   MKB's claim for breach of Washington's Consumer Protection Act ("CPA"), RCW ch.

7   19.86, which MKB summarily withdrew partway through trial (*compare* Prelim. JI (Dkt.

8   # 144) (including claim for CPA violation) *with* JI (Dkt. # 149) (not including claim for

9   CPA violation)).

10          With respect to the last of these items, the court finds that it is not possible to

11   segregate the time MKB's attorneys spent on the claims that MKB successfully brought

12   at trial for breach of contract, violation of IFCA, and bad faith, from the CPA claim that

13   MKB abandoned partway through trial.  *See, e.g.*, *Miller*, 325 P.3d at 303-04 (affirming

14   trial court's finding that fees based on claims for bad faith and violation of the CPA were

15   factually "interrelated" and not reasonably segregated).  The court cannot say, for

16   example, that MKB would have spent less time in depositions, crafting written discovery

17   questions or responses, or at trial, if MKB had never asserted its CPA claim.  Thus, the

18   court concludes that no reduction in fees for MKB's abandonment of its CPA claim is

19   warranted.

20          The court, however, is convinced that the time MKB spent on its largely

21   unsuccessful pre-trial discovery and dispositive motions and the time it spent pursuing

22   certain categories of contract damages that were ultimately dismissed or excluded from

ORDER- 19

1  trial as disclosed in an untimely manner is capable of segregation.  The first eight items

2  listed above were specific tasks or activities that MKB's attorneys strategically chose to

3  pursue, but that proved to be unproductive in furthering MKB's claims against American

4  Zurich.  Having reviewed and ruled upon the various motions and categories of damages

5  listed above and at issue here, and having presided at the trial, the court finds that MKB's

6  efforts with respect to the listed items were unnecessarily expended and insufficiently

7  related to the overall success of the litigation to warrant an award of fees.  *See Pham v.*

8  *City of Seattle*, 151 P.3d 976, 981-82 (Wash. 2007) (affirming trial court's segregation of

9  and declination to award fees for, among other items, plaintiffs' unsuccessful cross-

10  motion for summary judgment and other unsuccessful motions as "unnecessarily

11  expended, unproductive, or not sufficiently related to the successful claims").

12      MKB's attorney billing records in this case are approximately 135 pages long.

13  (*See* Mullinex Decl. Ex. 1; Jensen Decl. Ex. 3.)  Although the court should exclude any

14  wasteful or duplicative hours and any hours for unsuccessful theories or claims, "an

15  explicit hour-by-hour analysis of each lawyer's time sheets" is unnecessary as long as the

16  court considers relevant factors and gives reasons for the amount awarded.  *See*

17  *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 773 P.2d 114, 118 (Wash. Ct. App.

18  1989), *rev'd on other grounds*, 790 P.2d 604 (Wash. 1990).  The court declines to

19  undertake an hour-by-hour analysis of MKB's fees in order to excise the precise number

20  of hours attributable to the unproductive items listed above.  Indeed, in light of the

21  substantial number of blocked entries in MKB's bills, such an undertaking would not be

22  successful in any event.  Nevertheless, this court reviewed and ruled upon all of the

parties' pretrial motions and presided over the trial herein.  Thus, the court is capable of

estimating the percentage of hours entailed in the unproductive and unnecessary activities

listed above.  *See Yousoufain v. Office of Ron Sims*, 60 P.3d 667, 676-77 (Wash. Ct. App.

2004) (affirming trial court's percentage reduction in fee application for unproductive

time), *aff'd in part and rev'd on other grounds*, 98 P.3d 463 (Wash. 2004); *see also Gates*

*v. Deuknejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (affirming across the board

percentage reduction in fees "when faced with a massive fee application" where district

court appropriately describes its rationale for doing so); *Clausen v. Icicle Seafoods, Inc.*,

272 P.3d 827, 834 (Wash. 2012) (upholding trial court's percentage reduction in fees in

context of maintenance and cure action "where the specifics of the case make segregating

the actual hours difficult").  Accordingly, the court finds that an overall 20% reduction in

MKB's claimed fees would sufficiently account for the hours spent on the unproductive

activities listed above that are contained in MKB's fee request.

  In sum, the court employs the traditional lodestar test when evaluating MKB's

request for reasonable attorney fees.  The court declines to apply a multipler to MKB's

lodestar figure.  The court requires MKB to reduce all blocked billing entries by 20%.

The court further requires an across the board 20% reduction in MKB's attorney fee

award for its failure to account for the hours it spent on a variety of unproductive pretrial

activities and damages claims.

## C.  Actual Litigation Costs

  MKB seeks recovery of its litigation costs on two grounds.  First, MKB prevailed

on its IFCA claim, and IFCA provides for the recovery of "actual and statutory litigation

1   costs, including expert witness fees."  RCW 48.30.015(3).  Second, under *Olympic*

2   *Steamship Co. v. Centennial Insurance Co.*, 811 P.3d 673, 680-81 (Wash. 1991), MKB is

3   entitled not only to its attorney fees, but also to "be compensated for **all** of the expenses

4   necessary to establish coverage as part of those attorney fees which are reasonable."

5   *Panorama Village Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 26 P.3d 910,

6   917 (Wash. 2001) (bolding in original).

7           Under the foregoing Authority, MKB seeks recovery of $160,580.50 in litigation

8   costs.  (Mot. at 5.)  MKB breaks these costs down into four categories:  (1) expert witness

9   fees paid by MKB totaling $54,162.10 (*id.* at 8), (2) travel expenses paid by MKB

10  totaling $5,402.55 (*id.* at 8), (3) MKB's labor costs totaling $49,249.95 (*id.* at 8-9), and

11  (4) litigation costs advanced by MKB's attorneys totaling $52,115.94 (*id.* at 7).  The

12  court will consider each category in turn.

13          **1.  Expert Witness Fees**

14          American Zurich has not challenged MKB's claim for expert witness fees and

15  appears to agree that Washington law permits MKB to recover these expenses in the

16  context of a coverage dispute in which the insured prevails.  (*See generally* Resp.;

17  Talmage Decl. (Dkt. # 168) at 4 ("In *Panorama Village* . . . , the Washington Supreme

18  Court authorized a party in an insurance coverage dispute to recover expert witness fees

19  pursuant to an equitable exception.").)  The court agrees that these costs are specifically

20  allowed under *Panorama Village*, 26 P.3d at 917, and thus the court grants this portion of

21  MKB's motion.

22  *//*

1

    **2.   Travel Expenses**

2

    In addition, the court could not find any challenge in American Zurich's response

3
to the travel expenses paid for by MKB.  (*See generally* Resp.; Talmage Decl.)

4
Specifically, MKB claims Mr. Jensen's travel expenses for a trip in which he joined

5
counsel in California for the depositions of Richard Dugo and Richard Norman, who

6
were involved in the handling of MKB's claim, as well as travel expenses that MKB

7
incurred to have its witnesses travel to Seattle for live testimony at trial.  (*See* Mot. at 8;

8
Jensen Decl. ¶ 19, Ex. 6.)  As a party to the litigation, MKB is entitled to have a client

9
representative present at depositions, and the court finds that it is reasonable for MKB to

10
pay travel expenses to have its witnesses present for live testimony at trial.  The court,

11
therefore, grants this portion of MKB's motion as well.

12

    **3.   MKB's Labor Costs**

13

    MKB seeks $49,249.95 in labor costs that it asserts it incurred as a result of its

14
employees or former employees attendance at depositions or trial or providing other

15
support to MKB's litigation effort.  (Jensen Decl. (Dkt. # 159) ¶¶ 2-13.)  American

16
Zurich objects to "MKB's unprecedented wage claim for MKB staff—including Mark

17
Jensen, Andy Romine, and Bill Nesheim—during the course of the litigation."  (Resp. at

18
5.)

19

    The court agrees with American Zurich that MKB's recovery of wages for

20
employees who testified or otherwise participated in MKB's lawsuit against American

21
Zurich would be an unprecedented stretch of both the IFCA provision awarding "actual"

22
litigation expenses, RCW 48.30.015(3), and the costs "necessary to establish coverage"

1    that MKB is entitled to recover under *Panorama Village*, 26 P.3d at 917.  MKB was

2    obligated to pay salaries to its employees irrespective of its litigation with American

3    Zurich.  MKB acknowledges that it could find no Washington case authority supporting

4    an award of this type of "cost" (Reply at 3 ("[I]t is true that no case cited by MKB

5    *requires* the [c]ourt to order that amount.") (italics in original)), and the court could find

6    no such case either.  Absent some Washington authority indicating that either RCW

7    48.30.015(3) or *Panorama Village* should be extended to cover expenses for labor that

8    MKB would have incurred irrespective of its coverage suit, the court is unwilling to order

9    the reimbursement of these "costs" here.  Such an order would constitute an

10   unprecedented extension of Washington law that is not the province of this court to

11   undertake.

12          In addition, even if the court were inclined to award these costs (which it is not),

13   much of MKB's documentation of the time that its employees spent supporting the

14   litigation is inadequate.  Although MKB apparently has "time records" concerning some

15   of the employees at issue (*see* Jensen Decl. ¶¶ 7-8), copies of those records have not been

16   provided to the court.  Further, the exhibit detailing MKB's costs associated with Mr.

17   Romine's and Mr. Nesheim's participation in depositions and at trial indicates that the

18   hours attributed to each of these men are only estimates created long after the fact by Mr.

19   Jensen.  (*Id.*  ¶¶ 7-8, Ex. 1.)  Moreover, there is no testimony or evidence directly from

20   either Mr. Romine or Mr. Nesheim regarding the amount of time that they spent

21   participating in any phase of the litigation.  In the context of an attorney fee petition,

22   Washington courts have stated that counsel "must provide contemporaneous records

1    documenting the hours worked." *Johnson v. Wash. Dep't of Transp.*, 313 P.3d 1197,

2    1205 (Wash. Ct. App. 2013).  Reconstructed records "should only be credited if

3    supported by other evidence such as testimony or secondary documentation."  *Id.*  Here,

4    MKB has not provided any secondary documentation or the testimony of the two

5    individuals who actually accrued the time.  The court finds MKB's documentation of

6    these reconstructed hours to be inadequate.  Accordingly, the court denies the portion of

7    MKB's motion related to labor costs for Mr. Romine and Mr. Nesheim on this ground as

8    well.

9          Mr. Jensen also appears to have reconstructed and estimated his own time that he

10   attributes to assisting with the litigation, but there is no indication that this reconstruction

11   is based upon the review of any contemporaneously recorded time records.  (*See id.* ¶¶ 9-

12   12.)  Mr. Jensen indicates that he believes his reconstruction is "conservative" (*see id.*

13   ¶¶ 9-11) and that the hours are "easily identified" because "[a]s shown in Exhibit 1 . . . ,

14   the depositions I attended required scheduled blocks of time that required travel so the

15   hours are easily identified" (*id.* ¶ 11).  However, Mr. Jensen provides no explanation

16   concerning why or how his estimate is a "conservative" one, nor does anything in Exhibit

17   1 identify the blocks of time he spent attending depositions.  Like the hours claimed for

18   Mr. Romine and Mr. Nesheim, the court concludes that even if this type of "cost" were

19   reimbursable under Washington law, MKB has failed to provide adequate documentation

20   of the time Mr. Jensen spent on the litigation to justify such an award.

21         Finally, MKB also asks the court to order American Zurich to reimburse MKB for

22   the $3,355.20 that MKB paid to Mr. Nesheim and Mr. Romaine to secure their attendance

ORDER- 25

1    at trial once they were no longer employees of MKB.  (*See id.* at ¶ 13, Ex. 2.)  MKB

2    argues that the payment of a fee to these former employees for their factual testimony is

3    "akin" to the payment of "'expert' charges."  (Mot. at 9.)

4          Reimbursement for this type of payment to lay witnesses would also represent an

5    unprecedented expansion of the type of costs that courts have previously awarded to

6    prevailing insureds under either IFCA or *Panorama Village*.  MKB offers no specific

7    authority in which a court has ordered the payment of fact witness to be reimbursed under

8    either IFCA or *Panorama Village* beyond the statutory witness fee permitted under RCW

9    2.40.010.  (*See generally* Mot.)  "Reimbursement to lay witnesses for time spent

10   'responding to legal matters' is an issue not widely addressed."  *Johnson*, 313 P.3d at

11   1207.  Washington courts, however, have expressly held that professionals, like Mr.

12   Nesheim and Mr. Romaine, "who acquire or develop facts not in anticipation of litigation

13   are not entitled to expert witness fees."  *Paiya v. Durham Constr. Co.*, 849 P.2d 660, 661

14   n.1 (Wash. Ct. App. 1993); *see also Baird v. Larson*, 801 P.2d 247, 249 (Wash. Ct. App.

15   1990) ("Professionals who have acquired or developed facts and opinions not in

16   anticipation of litigation but from involvement as an actor in a transaction, are not

17   entitled to expert witness fees.").  Thus, the court is disinclined to adopt MKB's position

18   that the payment of these witnesses is "akin" to an expert witness fee since Washington

19   courts have expressly disallowed such fees to fact or occurrence witnesses.

20         Moreover, in the context of a motion to recover fees and costs under Washington's

21   Law Against Discrimination ("WLAD"), the Washington Court of Appeals expressed

22   doubt that "costs for a fact witness's time spent 'responding to legal matters'" are

1  recoverable in general, *see Johnson*, 313 P.3d at 1207, and expressly "declined to hold

2  that time spent by a fact-witness treating physician 'responding to legal matters' is

3  recoverable as a WLAD litigation cost," *id.* at 1208.  If this type of cost is not recoverable

4  under WLAD, which allows a "liberal recovery of costs by the prevailing party," *Blair v.*

5  *Wash. State Univ.*, 740 P.2d 1379, 1387 (Wash. 1987), the court is doubtful such costs

6  would be recoverable under IFCA or *Panorama Village* either.

7      Finally, the court notes that the payment of fact witnesses is ordinarily limited to

8  the amount prescribed as a statutory fee.  *See* RCW 2.40.010.  The State's sound public

9  policy is reflected in that statute.  *See, e.g.*, *Beard v. Ragan*, No. CL 99-064, 2000 WL

10  33258655, at *4 (Va. Cir. Ct. Jan. 12, 2000) ("The public policy of the Commonwealth is

11  . . . expressed in the statutes setting witness fees. . . . At common law witnesses were not

12  paid at all, attendance and testimony being considered an important duty of citizenship.").

13  The court does not suggest, nor does American Zurich argue, that MKB's payment of

14  fees to these witnesses was improper.  Nevertheless, absent clear Washington authority

15  directing the recovery under either IFCA or *Panorama Village* of payments to fact

16  witnesses in excess of the statutory amount, this court declines to order the

17  reimbursement of such expenditures.  MKB could have presented the testimony of both

18  of these witnesses at trial through their depositions.  Instead, MKB chose to pay these

19  witnesses extra money in order to secure their personal appearance in the courtroom.

20  Although MKB made the strategic decision to incur this cost, the court cannot conclude

21  that these expenses were "actual" litigation costs under IFCA or were costs "necessary"

22

1    to establish coverage under *Panorama Village*.  Thus, the court denies this portion of

2    MKB's motion as well.

3    **4.  Litigation Costs Advanced by MKB's Attorneys**

4    Finally, MKB seeks to recover $52,115.94 in litigation expenses incurred by its

5    attorneys.  (Jensen Decl. ¶¶ 14-16, Exs. 3-5.)  MKB asserts that these costs fall into the

6    following categories:  (1) electronic legal research, (2) photocopying charges, (3) the

7    mediation fee, (4) messenger and Federal Express fees, (5) court reporter and

8    videographer fees, (5) meals during working lunches, (6) costs incurred by attorneys for

9    travel to depositions (including airfare, taxi fees, parking, meals, and hotel charges), (7)

10   telephone conference fees, (8) the cost of a magnifying glass (for reading survey

11   documents), (9) PACER fees for searching electronic dockets for other cases involving

12   witnesses, (10) ferry costs for attorneys commuting from Bremerton for meetings in

13   Seattle, (11) the cost of daily trial transcriptions, (12) the cost for hotel rooms near the

14   courthouse for one of MKB's attorneys and his assistant during trial, (13) the cost of

15   parking for one of MKB's attorneys during trial, (14) hotel rooms for witnesses during

16   trial, and (15) meals for the trial team during trial.  (*See* Mot. at 7; Jensen Decl. Exs. 3-5.)

17   MKB, however, does not identify the portion of its costs that belongs in each of the above

18   categories or identify the specific cost invoices that fall into each of the above categories.

19   American Zurich does not dispute that MKB is entitled to an award of costs or that

20   the attorneys incurred each of the expenses MKB claims above.  (*See* Mullinex Decl. Ex.

21   2.)  Instead, American Zurich asserts "a general objection to the extent MKB seeks

22   reimbursement for costs beyond the permissible boundaries of *Panorama Village*[, 26

1    P.3d at 917,] and IFCA[, RCW 48.30.015(3)], including MKB's attorney's personal

2    expenses (meals, ferry expenses, and hotel accommodations); [and] office overhead

3    expenses (copy charges, etc.)."[12]   (Resp. at 5.)   American Zurich argues that MKB's

4    request for litigation costs and expenses "far exceeds" what is permitted under either

5    authority and "intrud[es] into a recovery of . . . what are usually considered damages."

6    (Talmage Decl. (Dkt. # 168) at 14.)   Because both MKB and American Zurich referred in

7    their arguments only to the categories of costs claimed by MKB and not to specific

8    invoices, the court will confine its ruling on this portion of MKB's claim for costs to a

9    discussion of the identified categories as well.

10       IFCA permits the court to award "actual and statutory litigation costs, including

11   expert witness fees," RCW 48.30.015(3), and *Panorama Village* permits the court to

12   award "**all** of the expenses necessary to establish coverage" in order to make the insured

13   "whole."  *Panorama Village*, 26 P.3d at 917 (bolding in original).  There are few cases

14   describing the precise categories of "actual" or "necessary" costs or litigation expenses

15   _____

16       [12] American Zurich also objects to "the recovery of arbitration costs."  (Resp. at 5.)
     American Zurich, however, did not identify any specific costs in MKB's motion that American
17   Zurich believes pertained to MKB's arbitration with the LYSD, and this court could identify
     none.  If such arbitration costs are included in MKB's request for reimbursement, they should be
18   excised.  *Panorama Village* pertains to the recovery of costs in the coverage litigation, *see* 26
     P.3d at 917 ("The insured must therefore be compensated for **all** of the expenses necessary to
19   establish coverage . . . .") (bolding in original), and IFCA provides for recovery by "[a]ny first
     party claimant to a policy of insurance who is unreasonably denied a claim for coverage" of "the
20   actual damages sustained, together with the costs of the action."  RCW 48.30.015(1).  The statute
     therefore provides for recovery of costs incurred in the coverage action involving an IFCA
21   claim—not of some other action or arbitration.  *See also* RCW 48.30.015(3) ("The superior court
     shall . . . award . . . actual and statutory litigation costs . . . to . . . the prevailing party in such an
22   action.").  To recover costs incurred in another action or proceeding, the insured would have to
     demonstrate at trial that such costs fell within its "actual damages" under IFCA, but that issue is
     not presently before the court.

ORDER- 29

1   that fall within the parameters of IFCA or *Panorama Village*.  In *Panorama*, the issue

2   was whether charges for electronic legal research and expert witness fees should have

3   been included within the allowance for attorney fees provided for under  *Olympic*

4   *Steamship Co. v. Centennial Insurance C*o., 811 P.2d 673, 681 (Wash. 1991).  *See*

5   *Panorama Village*, 26 P.3d at 917.  *Panorama* does not provide any ruling concerning

6   reimbursement of items such as airfare or charges for food and lodging.  *See generally id.*

7   In evaluating the type of costs and expenses for which MKB should be reimbursed, the

8   court is mindful that under *Panorama Village* the insured should be made "whole," but

9   that the court should award only "expenses necessary to establish coverage," *id.*, and that

10  under IFCA the amounts awarded must represent "actual . . . litigation costs," RCW

11  48.30.015(3).

12      American Zurich appears to concede that electronic legal research fees are

13  recoverable (Talmage Decl. at 14 ("[E]xpenses often include Westlaw charges."), and

14  allowing recovery of these costs is consistent with *Panorama Village*, 26 P.3d at 917-18.

15  Accordingly, the court will allow MKB to recovery these expenses.  *See also Philips*

16  *Oral Healthcare, Inc. v. Fed. Ins. Co.*, No. C98-1211JLR, 2005 WL 3020014 (W.D.

17  Wash. Nov. 10, 2005) (awarding Westlaw research charges under *Panorama Village*).

18      In addition, the court finds that MKB is entitled to recover the following additional

19  categories of costs:  photocopying charges, messenger and Federal Express charges, court

20  reporter and videographer fees, costs incurred by attorneys while traveling to conduct

21  depositions, telephone conference fees, PACER fees, and hotel rooms for out-of-town

22  witnesses during trial.  *See, e.g., McCrary v. Life Ins. Co. of N.A.*, No. CV 01-360-BR,

1    2002 WL 31466491, at *11 (D. Or. Mar. 7, 2002) (awarding filing fees, photocopying,

2    long distance telephone charges, facsimile charges, computer-assisted legal research, and

3    expert witness fees under the *Olympic Steamship/Panorama Village* fee and cost shifting

4    rule).  These are costs or expenses that were "necessary to establish coverage,"

5    *Panorama Village*, 26 P.3d at 917, or were "actual . . . litigation costs," RCW

6    48.30.015(3).  The court grants MKB's motion for reimbursement of these expenses.

7         The court, however, is disinclined to award the following categories of expenses

8    as "necessary to establish coverage" or "actual" litigation costs:  the mediation fee, meals

9    during working lunches, the cost of a magnifying glass, ferry costs for attorneys

10   commuting from Bremerton into Seattle, the cost of daily trial transcriptions, the cost for

11   hotel rooms near the courthouse for one of MKB's attorneys and his assistant, the cost of

12   parking for another of MKB's attorneys during trial, and meals for the trial team.  The

13   mediation fee is not a litigation cost, nor was it necessary to establish coverage.  The cost

14   of meals, working or otherwise, for attorneys or others located in Seattle is an expense

15   that would have been borne irrespective of the litigation or trial.  The costs of these meals

16   are not expenses of litigation.  *See Castellano v. Charter Commc'ns, LLC*, No. C12-5845

17   RJB, 2014 WL 1569242, at *5 (W.D. Wash. Apr. 17, 2014) (declining to award such

18   meals in the context of an award of expenses under WLAD); *see also Conti v. Corporate*

19   *Servs. Grp., Inc.*, --- F. Supp. 2d ----, 2014 WL 3396083, at *29 (W.D. Wash. July 10,

20   2014) ("The court will not compensate counsel for any 'working lunch' or 'working

21   dinner' . . . .").  Presumably, the magnifying glass is a tool that has continued to be used

22   even following this litigation, and the court cannot easily classify its cost as "necessary to

ORDER- 31

1    establish coverage" or an "actual" litigation cost.  The court takes judicial notice of the

2    fact that travel by ferry is a regular and normal part of daily commuting in the Puget

3    Sound area, and MKB is not entitled to recoup the local commuting expenses of its

4    lawyers as an expense "necessary to establish coverage" or an "actual" litigation cost.  In

5    addition, the cost of hotel rooms and parking near the courthouse during trial for MKB's

6    attorneys who are otherwise located within the Western District of Washington, while a

7    convenience for counsel, is not a cost or expense that can be recouped under the

8    parameters of IFCA or *Panorama Village*.  Finally, the court also finds the cost of daily

9    trial transcriptions to be excessive and one that "could have been avoided by simply

10   taking notes."  *See id.*  Accordingly, the court denies MKB's motion for the foregoing

11   categories of costs and expenses.

## IV.   CONCLUSION

13        As described above, the court GRANTS in part and DENIES in part MKB's

14   motion for attorney's fees, nontaxable costs, and prejudgment interest (Dkt. # 156).

15   MKB is entitled to fees, costs, and prejudgment interest as stated herein.  The parties are

16   directed to meet and confer and prepare a proposed order awarding fees, costs, and

17   prejudgment interest that is consistent with this order and that excises those amounts that

18   the court has disallowed.  If this final request for agreement proves futile, the parties may

19   submit a single brief that includes separate paragraphs with each party's suggested award

20   with respect to each category delineated above, together with supporting affidavits

21   //

22   //

1   regarding the appropriate fee, cost, and interest calculations.  The parties are direct to

2   present the court with their joint proposed order no later than February 13, 2015.

3          Dated this 27th day of January, 2015.

4

5

6   JAMES L. ROBART
    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 33